# United States Court of Appeals

## For the First Circuit

No. 02-1760

JILL ANN SMILOW, on her own behalf and on behalf of all others
similarly situated,

Plaintiff, Appellant,

v.

SOUTHWESTERN BELL MOBILE SYSTEMS, INC., d/b/a CELLULAR ONE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Edward F. Haber with whom Todd S. Heyman and Shapiro Haber &
Urmy LLP were on brief for appellant.

Marcus E. Cohn with whom Jonathan Sablone, John Pagliaro, and
Nixon Peabody LLP were on brief for appellee.

March 7, 2003

**LYNCH**, **Circuit Judge**.  This is an appeal from a decision decertifying a class action brought by and on behalf of wireless phone customers of Cellular One, the doing-business name of Southwestern Bell Mobile Systems, Inc.  The putative class members are Massachusetts and New Hampshire residents who were charged for incoming calls despite having signed a standard form contract, used mainly between August 1994 and February 1996, purportedly guaranteeing free incoming call service.

Class representative Jill Ann Smilow brought suit in 1997 for breach of contract and violations of Massachusetts General Laws chapter 93A, §§ 2(a), 9, 11 (West 1997), and the Telecommunications Act (TCA) of 1996, 47 U.S.C. § 201(b) (2000).  The district court first certified and then decertified the contract, ch. 93A, and TCA classes.  This court vacated the decertification order and remanded; the district court subsequently reinstated its decertification order, Smilow v. S.W. Bell Mobile Sys., Inc., No. 97-10307-REK (D. Mass. Apr. 10, 2002) (memorandum and order).  We reverse.

I.

Smilow and proposed class representative Margaret L. Bibeau each signed a standard form contract for cellular telephone services with Cellular One in 1995.  The form contract says, "Chargeable time for calls originated by a Mobile Subscriber Unit starts when the Mobile Subscriber Unit signals call initiation to

-2-

C1's facilities and ends when the Mobile Subscriber Unit signals call disconnect to C1's facilities and the call disconnect signal has been confirmed." The parties contest the meaning of "originated." Smilow alleges that this language precludes Cellular One from charging for incoming calls. It is undisputed that a large group of Cellular One customers signed the same contract and were subject to charges for incoming calls. The contract contains an integration clause providing that changes must be in writing and signed by both parties.

Smilow and Bibeau purport to represent a class of Massachusetts and New Hampshire residents who subscribed for Cellular One services under this contract. The potential class members all signed the standard form contract, which was in broad use from August 1994 to February 1996. They did have a variety of rate plans and usage patterns. Some Cellular One customers paid a flat fee for a fixed number of minutes each month and an additional per-minute charge if they exceeded this fixed amount of air time (for example, $40/month for the first 300 minutes/month and 10 cents/minute thereafter). Many Cellular One customers paid different rates for day- and night-time calls.

Cellular One charged Smilow, Bibeau and the potential class members for incoming as well as outgoing calls. Smilow received just one incoming call; Bibeau received many incoming calls. Cellular One invoices clearly indicate that customers are charged

for incoming calls. The user guide mailed to new Cellular One customers also states that the company charges for both incoming and outgoing calls. Bibeau paid her invoices knowing she was being charged for incoming calls.

## II.

On February 11, 1997, Smilow, as a purported class representative, filed suit in federal district court against Cellular One for breach of contract and violations of ch. 93A and the TCA. The district court had jurisdiction over the federal claims under 28 U.S.C. § 1331 (2000) and over the state law claims under 28 U.S.C. § 1367. The district court originally certified the ch. 93A, breach of contract, and TCA classes on October 9, 1998.[1] The district court rejected an initial attempt to decertify the classes for Smilow's incoming-calls claims. The court, with the approval of both parties, then filed a scheduling order on November 23, 1999 bifurcating the liability and damages issues on the incoming calls claims and providing that liability would be litigated to conclusion before further discovery or other activities concerning damages took place.

On September 15, 2000, the district court held an "evidentiary hearing" on plaintiffs' motion to substitute Bibeau as a new class representative. Cellular One had opposed this motion partly on the

---

[1] It later dismissed one of Smilow's claims, the "rounding-up" breach of contract claim. That claim is not appealed.

-4-

grounds that, because common issues of fact did not predominate among the class members, neither Bibeau nor any other individual could properly represent the class. Both parties stated that they regarded the evidentiary record as adequate to allow the court to rule on plaintiffs' motion and did not wish to make additional submissions on this issue. Nonetheless, the district court issued a memorandum and order on December 1, 2000 extending the time period to submit evidence on the designation of Bibeau as a new class representative.

On March 22, 2001, the district court granted defendants' pending motion to decertify the "incoming call" class, on the grounds that common issues of fact do not predominate.[2] Smilow v. S.W. Bell Mobile Sys., Inc., 200 F.R.D. 5, 9 (D. Mass. 2001). The court explained its conclusion that individual issues predominated as follows:

> Proof that many persons (even if not as many as 275,000) were billed for and paid charges for incoming calls in many months is not enough to show that any specific amount of damages could properly be found by a finder of facts at trial, or that any aggregate amount could properly be found. Proof of charges and payments is not evidence of harm or an amount

[2] Plaintiffs had opposed decertification, saying that individualized determinations would be unnecessary to establish damages. They argued that the detailed billing history of Ms. Bibeau produced by Cellular One, and submitted with plaintiffs' memoranda, supported their contention that damages, causation, and liability could be established using a mechanical process. If there were a question regarding the need for individualized damages hearings, plaintiffs argued, then they were entitled to discovery on this issue. Plaintiffs contended that, in any event, common issues predominated on the claim for ch. 93A statutory damages.

of harm on the basis of which damages could be awarded in the face of (i) a strong likelihood that services were received in return for the billed payments and (ii) lack of admissible evidence to rebut that strong likelihood.

Plaintiffs' assertions that causation will turn out to be "a common issue," and that the amount of damages calculable from defendant's records will "not be reasonably disputable," are not likely to be consistent with the record in this case after further discovery, regardless of how much longer the court allows for further discovery. To be a "common issue" in the relevant sense, the issue must be one that does not require separate dispute resolution processes for different individuals who are said to have claims in "common."

Id. at 8. The court held that additional discovery would not enable plaintiffs to show that common issues predominate for causation and damages. The court opined that separate damages hearings would be required for individual plaintiffs because (1) "services were received in return for the billed payments" and (2) particular class members had different plans and usage patterns. Although the opinion and order purported to decertify all incoming-call class claims, it contained no reasoning about the ch. 93A or TCA claims.

In its March 22 opinion, the court also denied Bibeau's motion to become a designated class representative. Id. at 6. The district court provided little explanation of its decision to deny the motion to designate Bibeau as a class representative. It merely observed that the motion was "inadequately supported on the record before the court and thus also not effective to defeat the defense motion to decertify." Id.

-6-

Plaintiffs sought discretionary appellate review of the decertification order, pursuant to Fed. R. Civ. P. 23(f). On July 12, 2001, this court vacated the entire March 22, 2001 decertification order, noting that the district court had not addressed the ch. 93A claim. Smilow v. S.W. Bell Mobile Sys., Inc., No. 01-8001, slip op. at 1-2 (1st Cir. July 12, 2001).

After remand and additional written submissions and oral argument on the issue, the district court decertified the class for the contract, ch. 93A, and TCA claims. Smilow, No. 97-10307-REK, slip op. at 9 (D. Mass. Apr. 10, 2002).[3] The district court reinstated its March 22, 2001 decertification order, quoting the order at length and stating that its earlier reasoning was correct. The court then dismissed the ch. 93A claim class action on two grounds. First, the court held that the class members would fall into two groups: those who waived actual damages in favor of statutory damages of $25 and those who claimed actual damages. The court fell back on its original reasoning as to why the fact that actual damages could be easily calculated by computer was irrelevant. Second, the court held that individual issues predominated on causation. Here, it relied on its earlier rationale that, whatever the common contractual language, "services

---

[3] The district court had allowed limited discovery, which included permitting plaintiffs a circumscribed deposition of Susan Quintiliani, a Cellular One business analyst responsible for helping oversee the firm's billing system.

were received in return for the billed payments."  Although the district court purported to be addressing issues of causation, it again referred to supposed individual differences in the damages calculations to show why causation had no common issues.

The district judge also denied plaintiffs' renewed motion to designate Bibeau as a class representative on the grounds that she had not "suffered the same injury as the class."  Id. at 9.

Plaintiffs again appealed.  This court granted plaintiffs permission to appeal pursuant to Fed. R. Civ. P. 23(f).[4]

### III.

#### A.  Standard of Review

Orders certifying or decertifying a class are reviewed for abuse of discretion.  Califano v. Yamasaki, 442 U.S. 682, 703 (1979).  A district court abuses its discretion when it relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors.

---

[4] Rule 23(f) provides this court with discretion to hear an interlocutory appeal of a district court order certifying or decertifying a class.  This court will normally grant Rule 23(f) review when a class decertification ruling, apparently premised on an abuse of discretion by the district court, would have the practical effect of compelling a party to abandon a potentially meritorious claim. Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 293-94 (1st Cir. 2000); accord Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 834-35 (7th Cir. 1999); see 16 C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice & Procedure § 3931, at 75 (2d ed. Supp. 2002); see also Fed. R. Civ. P. 23 advisory committee's note ("Permission is most likely to be granted . . . when, as a practical matter, the decision on certification is likely dispositive of the litigation.").  That is the situation here.

See <u>Schubert</u> v. <u>Nissan Motor Corp.</u>, 148 F.3d 25, 30 (1st Cir. 1998).  An abuse of discretion also occurs if the court adopts an incorrect legal rule.  <u>Waste Mgmt. Holdings, Inc.</u> v. <u>Mowbray</u>, 208 F.3d 288, 295 (1st Cir. 2000).  Here the district court abused its discretion in decertifying the contract class and the ch. 93A class.[5]

B.  <u>Class certification</u>

1.  <u>General Standards</u>

A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class. <u>Gen. Tel. Co.</u> v. <u>Falcon</u>, 457 U.S. 147, 161 (1982).  To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b).  <u>Amchem Prods., Inc.</u> v. <u>Windsor</u>, 521 U.S. 591, 614 (1997).  The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  <u>Id.</u> at 613.  From its earlier certification order the district court necessarily concluded that

---

[5] We quickly dispose of Cellular One's initial contention that the only issue before us is the district court's holding that common issues would not predominate in a ch. 93A claim for statutory damages.  The district court's March 22, 2001 opinion decertified the contract, TCA, and ch. 93A classes.  This court's July 12, 2001 judgment vacated the first decertification order in its entirety; it did not affirm on (or address) the breach of contract or TCA classes or the ch. 93A actual damages class theory. The April 10, 2002 order, which reinstated the March 22, 2001 order, again decertified the contract, TCA, and ch. 93A classes. All issues from the April 10, 2002 order are now before us.

the Rule 23(a) elements had been met.[6]

The district court decertified on the basis of its analysis of Rule 23(b)(3), which requires, in pertinent part:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The district court examined the predominance, but not the superiority, requirement of Rule 23(b)(3).

## 2. The Predominance Requirement

The district court's decertification of the classes for the contract, ch. 93A, and TCA claims, as well as its denial of the motion to substitute a new class representative, all rested on fundamental errors of law and fact. Once these errors are corrected, it becomes clear that common issues as to both liability and damages predominate on the elements of the breach of contract and ch. 93A claims. We first consider the contract claim.

## a. Breach of Contract Claim

The first error was initially contained in the following statement from the district court's March 22, 2001 opinion decertifying the class:

> Proof of charges and payments is not evidence of harm or an amount of harm on the basis of which damages could be awarded in the face of (i) a strong likelihood that services were received in return for billed payments and (ii) lack of

---

[6] Southwestern Bell does not argue that any Rule 23(a) requirements were not met.

admissible evidence to rebut that strong likelihood. Smilow, 200 F.R.D. at 8. In its April 10, 2002 memorandum and order after remand, the district court repeated this language and stated that it thought this analysis correct.

From this statement we understand the district court to have believed that the defendant would be entitled to payment for incoming calls on a theory of quantum meruit even if plaintiffs were to prevail on their breach of contract claim. Under the doctrine of quantum meruit, one who renders goods or services in the absence of an enforceable contract may be entitled to payment for those services to the extent the recipient benefitted from them. See, e.g., Meng v. Trs. of Boston Univ., 693 N.E.2d 183, 187 n.4 (Mass. App. Ct. 1998). "If the plaintiff is entitled to recover on a contract, he cannot recover in quantum meruit." Marshall v. Stratus Pharms., Inc., 749 N.E.2d 698, 703 n.6 (Mass. App. Ct. 2001). Though we do not decide the question here, it would similarly seem that where a defendant is clearly not due payment under the terms of an enforceable contract, such defendant cannot claim a right to payment under quantum meruit. "Where . . . there is an enforceable express or implied in fact contract that regulates the relations of the parties or that part of their relations about which issues have arisen, there is no room for quasi contract." A.L. Corbin, Corbin on Contracts § 1.20 (J.M. Perillo ed., rev'd ed. 1993).

The district court's reliance on the doctrine of quantum meruit led it to overlook questions of law and fact common to all class members. As plaintiffs' brief says, "The plaintiffs' claims are based entirely on a standard form contract which the defendant used with every member of the class." The common factual basis is found in the terms of the contract, which are identical for all class members. The common question of law is whether those terms precluded defendant from charging for incoming calls.

Cellular One's waiver defense is also common to the class. "[A]ffirmative defenses should be considered in making class certification decisions." Mowbray, 208 F.3d at 295. Again, both the factual basis for and the legal defense of waiver present common issues for all class members.[7] All class members received a user guide and monthly invoices showing that defendant charged the class members for the incoming calls.

Even in the unlikely event that individual waiver determinations prove necessary, the proposed class may still satisfy the predominance requirement. See id. at 296. Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members. E.g., 6A Fed. Proc., L. Ed. § 12:248,

---

[7] At oral argument defendant first advanced and then wisely withdrew the argument that oral representations made by sales representatives to potential customers would vary the contract terms by customer and so defeat commonality. The contract contains an integration clause.

<u>Defenses to Individual Members' Claims</u> (2002) (citing cases); 32B Am. Jur. 2d <u>Federal Courts</u> § 2018 & n.1 (2002) (citing cases); <u>see, e.g.</u>, <u>Hoxworth</u> v. <u>Blinder, Robinson & Co.</u>, 980 F.2d 912, 924 (3d Cir. 1992) ("Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases.") (internal quotation omitted); <u>Cameron</u> v. <u>E.M. Adams & Co.</u>, 547 F.2d 473, 478 (9th Cir. 1976) (same). <u>See generally</u> <u>Mowbray</u>, 208 F.3d at 295 (identifying statute of limitations as an affirmative defense).

Instead, where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses. <u>See, e.g.</u>, <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 138-40 (2d Cir. 2001); <u>Hoxworth</u>, 980 F.2d at 924; <u>Cameron</u>, 547 F.2d at 477-78. After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. <u>In re Prudential Ins. Co. of Am. Sales Practices Litig.</u>, 148 F.3d 283, 315 (3rd Cir. 1998); <u>see</u> 5 J.W. Moore, <u>Moore's Federal Practice</u> § 23.46[.1], at 23-206 to 23-207 (3d ed. 1997 & Supp. 2002). If, moreover, evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d at 141 (describing

-13-

procedural options and collecting authorities); 1 H. Newberg & A. Conte, Newberg on Class Actions § 4.26, at 4-91 to 4-97 (3d ed. 1992) (same). For example, it can place class members with potentially barred claims in a separate subclass, 29A Fed. Proc., L. Ed. 70:411 & n.69, Predominance of Common Issues (2002) (citing cases); see Fed. R. Civ. P. 23(c)(4)(B), or exclude them from the class altogether, In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 141; 6A Fed. Proc., supra, § 12:248 & n.6 (citing cases).

Cellular One argues that even if there are common questions of law and fact, the district court did not abuse its discretion by decertifying the class because individual issues predominate on damages. This is largely an issue of whether plaintiffs could use a computer program to extract from Cellular One's computer records information about individual damages. The district court viewed this question as mostly beside the point and its decertification orders rested mainly on other grounds.

The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain. In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 139; Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977); Gold Strike Stamp Co. v. Christensen,

436 F.2d 791, 798 (10th Cir. 1970); 5 Moore, supra, § 23.46[2][a], at 23-208 & n.11 (collecting additional cases); 4 Newberg & Conte, supra, § 18.27, at 18-89; see Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").[8]

There is even less reason to decertify a class where the possible existence of individual damages issues is a matter of conjecture. See Mowbray, 208 F.3d at 298-99. Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria -- thus rendering unnecessary an evidentiary hearing on each claim. See Roper v. Consurve, Inc., 578 F.2d 1106, 1112 (5th Cir. 1978), aff'd on other grounds sub nom., Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326 (1980); 5 Moore, supra, § 23.46[3], at 23-210 & n.18 (collecting cases holding that class certification is appropriate where damages are calculable by mathematical formula).

Still, the parties here dispute whether it will be possible to establish breach, causation, and damages using a mechanical process. Cellular One argues that Smilow has not shown that she could use defendant's computer records either to distinguish the

_____

[8] Courts have denied class certification where these individual damages issues are especially complex or burdensome. See 5 Moore, supra, § 23.46[2][b], at 23-209 & n.17. That does not appear to be the case here.

subset of incoming call recipients who exceeded their monthly allotment of "free" minutes or to calculate how much extra each class member was charged as a result of receiving incoming calls.

The plaintiffs' expert, Erik Buchakian, says he could fashion a computer program that would extract from Cellular One's records (1) a list of customers who received incoming calls during the class period; (2) a list of customers who paid extra during the class period because they were billed for incoming calls; and (3) actual damages for each class member during the class period. Buchakian had access to more than adequate materials -- including a sample computer tape and the deposition of defendant's expert -- and has more than adequate expertise -- degrees in business and computer science and thirteen years of relevant work experience. The affidavits of defendant's expert, Susan Quintiliani, are consistent with Buchakian's conclusions.

If later evidence disproves Buchakian's proposition, the district court can at that stage modify or decertify the class, see Gen. Tel. Co., 457 U.S. at 160 ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."), or use a variety of management devices, In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 141; 1 Newberg & Conte, supra, § 4.26, at 4-91 to 4-97. Indeed, even if individualized determinations were necessary to

-16-

calculate damages, Rule (23)(c)(4)(A) would still allow the court to maintain the class action with respect to other issues.  See, e.g., In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 141; Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988); Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 470-71 (5th Cir. 1986).

Consideration of the policy goals underlying Rule 23(b)(3) also supports class certification.  The class certification prerequisites should be construed in light of the underlying objectives of class actions.  S.S. Partridge & K.J. Miller, Some Practical Considerations for Defending and Settling Products Liability and Consumer Class Actions, 74 Tul. L. Rev. 2125, 2129 (2000); see Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); see also Fed. R. Civ. Pro. 23(b)(3) advisory committee's note (construing predominance as a prerequisite for obtaining economies of scale).  Rule 23(b)(3) is intended to be a less stringent requirement than Rule 23(b)(1) or (b)(2).  See Amchem Prods., Inc., 521 U.S. at 615 ("Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable.") (internal quotations omitted).  The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to

-17-

warrant litigation.[9]  See id. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (internal quotations omitted); Mace, 109 F.3d at 344 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); see also Roper, 445 U.S. at 338 n.9 ("A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery.").

In this case, the claims of most if not all class members are too small to vindicate individually.  Smilow, for example, received

---

[9] Classes such as this one that are made up of consumers are especially likely to satisfy the predominance requirement.  See Amchem Prods., Inc., 521 U.S. at 625 (observing that the predominance requirement is especially likely to be satisfied in consumer fraud and antitrust actions); see also P. Venugopal, Note, The Class Certification of Medical Monitoring Claims, 102 Colum. L. Rev. 1659, 1683-84 (2002) (observing that the "sufficient level of predominance is not high" for class action suits vindicating the rights of consumers who purchased defective products).

just a single incoming call and so can obtain only minimal contract damages.

Overall, we find that common issues of law and fact predominate here. The case turns on interpretation of the form contract, executed by all class members and defendant. See W.D. Henderson, Reconciling the Juridical Links Doctrine with the Federal Rules of Civil Procedure and Article III, 67 U. Chi. L. Rev. 1347, 1373-74 (2000) (the fact that prospective class members signed nearly identical consumer contracts might, in itself, satisfy the predominance requirement).

b. The Ch. 93A Class

The decertification of the ch. 93A class is similarly flawed: it also rests on the premise that individual inquiries would be required because "services were received" for the charges on incoming calls.

As plaintiffs' brief says, "the Ch. 93A claim is not an oral misrepresentation claim, but [is] based on the same standard form contract which was signed by all class members." See generally Anthony's Pier Four, Inc. v. HBC Assoc., 583 N.E.2d 806, 821 (Mass. 1991) ("[C]onduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for ch. 93A purposes."). Cellular One points to law to the effect that a mere breach of contract is not a ch. 93A violation. See Whitinsville Plaza, Inc. v. Kotseas, 390

N.E.2d 243, 251 (Mass. 1979). That defense, though, argues for, not against, the commonality of liability issues. Plaintiffs disclaim any intent to rely on oral misrepresentations, and must adhere to that position or risk losing class status.[10]

Our prior discussion is adequate to dispose of any argument that decertification would be required because of a need for individual damages determinations. Since Smilow can compute actual damages using a computer program, we need not address plaintiffs' argument that common issues would predominate only on a claim for statutory damages, and not on a claim for individual damages.[11] As to statutory damages, the Supreme Judicial Court has held that plaintiffs who cannot show actual damages under ch. 93A may nonetheless obtain statutory damages if liability is established. Leardi v. Brown, 474 N.E.2d 1094, 1101-02 (Mass. 1985) (awarding statutory damages under ch. 93A § 9(3)). This too supports class

---

[10] We doubt that defendants will rely on oral representations. If its sales representatives, familiar with the terms of the contract, represented that there would be a charge for incoming calls without notifying the consumers that the contract language could be read differently, that could be viewed as evidence in plaintiffs' favor of an unfair or deceptive act. If the sales representatives represented that there would be no charge for incoming calls and the customer was charged, then that is also evidence in plaintiffs' favor.

[11] Section 9 allows plaintiffs to recover the greater of actual damages or twenty-five dollars; Section 11 allows plaintiffs to recover actual damages. Both sections allow plaintiffs to recover double or treble damages if the violations were willful or knowing or if the refusal to grant relief upon demand was made in bad faith. Mass. Gen. Laws ch. 93A, §§ 9(3), 11.

certification.

We are left with the district court's concern that any ch. 93A class would be composed of two groups:  a statutory damages group and an actual damages group.  But plaintiffs' position is that should any conflict develop between the two groups, the action would seek only statutory damages, class members would be given notice to that effect, and those who wish to pursue individual claims for actual damages could opt-out.  We agree this is an option and, in this context, the hypothetical conflict provides no basis for decertification.

c.  The Telecommunications Act Claim

Though the district court decertified the class for all claims, Smilow's appellate briefs and oral argument completely ignore its TCA claim.  Issues raised on appeal in a perfunctory manner (or not at all) are waived.  Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st Cir. 1990).  Smilow has therefore waived her argument that the district court improperly decertified the class in the TCA claim.  See Penobscot Indian Nation v. Key Bank, 112 F.3d 538, 563 (1st Cir. 1997).

IV.

We **reverse** the orders decertifying the class under the contract and ch. 93A theories.  On remand, there should be reconsideration of the denial of class representative status to Bibeau.  To the extent the denial rested on the decertification of

-21-

the class, this opinion disposes of that ground.  Costs are awarded

to plaintiffs.  **So ordered**.