# United States Court of Appeals
## For the First Circuit

No. 09-1717

MURRAY GINTIS, ET. AL,

Plaintiffs, Appellants,

v.

BOUCHARD TRANSPORTATION COMPANY, INC., ET. AL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,

Souter, Associate Justice,[*] and Selya, Circuit Judge.

Jason B. Adkins, with whom John Peter Zavez, Noah Rosmarin, and Adkins, Kelston & Zavez, P.C. were on brief, for appellants.
Ronald W. Zdrojeski, with whom Linda L. Morkan, Peter R. Knight, Robinson & Cole, LLP, Austin P. Olney, Robert G. Goulet, Christopher DeMayo, and Dewey & LeBoeuf, LLP were on brief, for appellees.

February 23, 2010

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.  A fuel barge owned and operated by defendants discharged a substantial amount of oil into the waters of Buzzards Bay in southeastern Massachusetts. Plaintiffs are owners of residential waterfront property on the bay who brought suit as individuals and as members of a proposed class. The district court denied class certification, but because the court did not subject the parties' contentions to the plenary analysis that precedent requires, we vacate the judgment and remand.

I

Defendants (collectively, Bouchard) owned and operated both the tugboat Evening Tide and the fuel barge Bouchard No. 120 in tow across Buzzards Bay on April 27, 2003.  The vessels strayed off course, and the barge struck a reef west of the clearly marked shipping channel, spilling as much as 98,000 barrels of fuel oil, and contaminating about 90 miles of the shore.

The cleanup efforts were directed initially by a "Unified Command," drawn from the United States Coast Guard, the Massachusetts Department of Environmental Protection and Bouchard, and later by a "Licensed Site Professional" (LSP) acting on behalf of Bouchard but under the supervision of the Commonwealth.  The Command divided the shoreline into 149 segments, which Shoreline Cleanup Assessment Teams inspected and categorized according to the degree of oiling observed (clean, very light, light, moderate,

heavy), the final tally being that 120 of the 149 segments were contaminated. The observations were collected along with information from other sources and used to produce maps identifying both the location of oil and the degree of oiling along the water's edge. The LSP then used the same segment and degree-of-oiling references to evaluate the effectiveness of the cleanup efforts, which the LSP declared complete as to any segment that posed no significant risk to human health, safety, public welfare, or the environment. Those segments subject to very light or light oiling, and those including stretches of sandy beach subject to moderate oiling, were certified to pose no such risk in May 2004. The segments remaining (subject to moderate and heavy oiling) were, with two apparent exceptions, certified in August 2006,[1] and the Commonwealth approved the LSP's comprehensive assessment in October 2006.

Plaintiffs sued in April 2006, raising three claims, one under Massachusetts General Law ch. 21E, § 5 (imposing strict liability for damage to real property on the owner of a vessel from which oil has spilled), a second for violation of Massachusetts General Law ch. 91, § 59A (providing double damages for the negligent discharge of petroleum), and a third for common law nuisance. Plaintiffs moved the district court to certify a class

---

[1] Despite the late date of certification, it appears that there were no documented closures of recreational areas following the spill.

consisting of all persons having an interest in property damaged by the spill, save for shorefront residents of the town of Mattapoisett, who had been certified as their own class in a state court action against the defendants.

The district court denied the motion for class certification upon making a finding under Federal Rule of Civil Procedure 23(b)(3) that common issues of law and fact do not predominate throughout the many potential claims of those who own, or own interests in, the bay shoreline. The judge noted that Bouchard has not conceded liability to any individual plaintiffs, that on the public nuisance claim plaintiffs must show both unreasonable interference and special injury to each claimant, and that plaintiffs must establish compensatory damages specific to each piece of property. The court relied heavily on the denial of class certification in Church v. General Electric Co., 138 F. Supp. 2d 169 (D. Mass. 2001), which had stressed that recovery for contamination of land downstream from a point of toxic discharge into a river would require parcel-by-parcel determinations as to injury and damages.

II

Decisions on class certification must rest on rigorous analysis, Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); Smilow v. Sw Bell Mobile Sys., 323 F.3d 32, 38 (1st Cir. 2003), a standard that we think is not met by the district court's opinion, which

-4-

listed the elements to be proven by evidence that ultimately must speak to individual claims, and cited one precedent example among cases going different ways. Although the district court's fact finding was too sparse to provide a prudent basis for us to say that a class should have been certified, we can say that plaintiffs presented substantial evidence of predominating common issues that called for a searching evaluation.

To begin with, Church does not support a general rule that pollution torts charged against a single defendant escape class treatment on the ground that the requirements to show injury, cause and compensatory amount must be sustainable as to specific plaintiffs. If that were the law, the point of the Rule 23(b)(3) provision for class treatment would be blunted beyond utility, as every plaintiff must show specific entitlement to recovery, and still Rule 23 has to be read to authorize class actions in some set of cases where seriatim litigation would promise such modest recoveries as to be economically impracticable. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997); Smilow, 323 F.3d at 41. Thus the Supreme Court has said, "[e]ven mass tort cases arising from a common cause or disaster may, depending on the circumstances, satisfy the predominance requirement." Amchem, 521 U.S. at 625. Although Church is one example of a single tortfeasor-multiple victim case in which certification was denied, others in the same genre go the other way. See, e.g., In re Methyl

Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 241 F.R.D. 435, 447 & nn. 98-104 (S.D.N.Y. 2007) (collecting cases involving a single incident or cause of harm where certification was granted); see also Mejdrech v. Met-Coil Sys. Corp., 319 F.3d 910, 910-11 (7th Cir. 2003) (noting that case law on "the appropriateness of class action treatment in pollution cases" is divided and collecting cases). Whether Church's reasoning survives Smilow is a question we need not address; here, it is enough to note such counter examples on the books, and the need for a trial court to come to grips with the actual alternatives of common versus individual litigation in the specific circumstances.

When that is done on remand, the focus will be on the plaintiffs' claim that common evidence will suffice to prove injury, causation and compensatory damages for at least a very substantial proportion of the claims that can be brought by putative class members. The proffer of common evidence goes beyond Bouchard's admission of negligence in causing the spill, and includes the contamination and clean-up records that will be offered to show harm to individual ownership parcels. Bouchard, to be sure, says not so fast, for it denies that records of the spill and its aftermath are exact enough to serve as proof keyed to very many specific parcels, and the briefs before us contend strenuously over the evidentiary adequacy of the documentation in question. But Bouchard's very opposition to the use of the arguably helpful

records seems to promise that most or all cases, if individually litigated, would require repetitious resolution of an objection by Bouchard that is common to each one of them.  Bouchard's position, in other words, apparently guarantees a crucial common issue of great importance in the event of individual litigation.

Bouchard has also made it abundantly clear that appraisal methodology will be another highly significant common issue. Plaintiffs have offered affidavits of their expert economist in support of a class-wide methodology for appraising damages depending on severity and duration of contamination.  Bouchard's effort to discredit this approach apparently portends a fight over admissibility and weight that would be identical in at least a high proportion of cases if tried individually.

It is enough to say here that Bouchard's arguments in this appeal appear to show that substantial and serious common issues would arise over and over in potential individual cases. Indeed, the only apparent mitigation of this prospect of duplicative litigation lies in the possibility that not many individual actions would be brought if separate actions were the only course, and this implicates the second condition for certification under paragraph (3), that class litigation be superior to a string of individual plaintiffs going alone.  While superiority is a separate base to be touched, it is addressed by many of the considerations that inform a trial court's judgment

call about how clearly predominant the common issues must be.  See Smilow, 323 F.3d at 41-42.  Here there is evidence that may well go to the very reason for Rule 23(b)(3), mentioned before (i.e., to make room for claims that plaintiffs could never afford to press one by one), since the record contains one estimate that potential individual recoveries are probably in the $12 to $39 thousand range.  Given the elements of injury, causation and compensation on which Bouchard intends to join issue, there is a real question whether the putative class members could sensibly litigate on their own for these amounts of damages, especially with the prospect of expert testimony required.  Like predominance, the issue of superiority is thus a serious one in these circumstances and should be addressed thoroughly.

We repeat that the district court's spare treatment of the contending factual claims makes it inadvisable for us to decide here whether denying class certification (on damages alone or on all issues, see Fed. Rule Civ. Proc. 23(c)(4); Smilow, 323 F.3d at 40-41) would be an abuse of discretion.  But ruling on certification without grappling in detail with the parties' contending proffers and arguments stopped short of exercising informed discretion, and for that reason we **vacate** and **remand** for plenary consideration.[2]  Each party shall bear its own costs.

---

[2]  Bouchard argues for affirmance on grounds of issue preclusion, invoking the judgment of the Massachusetts state court certifying a class limited to owners of property in Mattapoisett,

**So ordered.**

---

instead of the baywide class originally requested by the named plaintiffs. But that judgment has no preclusive effect against these plaintiffs, who were neither parties to the state action nor in privity with those who were. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) (preclusive effect in federal court of state-court judgment is determined by state law); Sena v. Commonwealth, 629 N.E. 2d 986, 992 (Mass. 1994); Mass. Prop. Ins. Underwriting Ass'n v. Norrington, 481 N.E.2d 1364, 1366-67 (Mass. 1985) ("A nonparty to a prior adjudication can be bound by it only where the nonparty's interest was represented by a party to the prior litigation." (internal quotation marks omitted)).