**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHIEFTAIN ROYALTY COMPANY,

    Plaintiff - Appellee,

v.

XTO ENERGY, INC.,

    Defendant - Appellant.

------------------------------

OKLAHOMA INDEPENDENT
PETROLEUM ASSOCIATION; LINN
OPERATING, INC.;
MID-CONTINENT OIL & GAS
ASSOCIATION OF OKLAHOMA,

    Amici Curiae.

No. 12-7047
(D.C. No. 6:11-CV-00029-FHS)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **MATHESON**, Circuit Judges.

    Defendant-Appellant XTO Energy, Inc. (XTO) appeals from the district

court's order certifying a class of Oklahoma royalty owners, represented by

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Chieftain Royalty Company (Chieftain).  The class includes over 16,000 royalty

owners, approximately 14,300 leases, and roughly 2,300 wells.  Chieftain's

underlying claim is that XTO has underpaid royalties in violation of Oklahoma

law by improperly deducting costs incurred to place gas in marketable condition.

The district court certified the class under Federal Rule of Civil Procedure

23(b)(3).  Exercising our jurisdiction under 28 U.S.C. § 1292(e) and Fed. R. Civ.

P. 23(f), we vacate the district court's certification order and remand for further

proceedings consistent with this opinion, as well as our opinion in the companion

case, Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., ---F.3d--

--, No. 12-3176 (10th Cir. July __ 2013).

Background

Chieftain represents a class comprising "[a]ll non-excluded persons or

entities who are or were royalty owners in Oklahoma wells since July 1, 2002,

where XTO . . . is or was the operator (or, as a non-operator, XTO separately

marketed gas)."  Chieftain Royalty Co. v. XTO Energy, Inc., No. CIV-11-29-

FHS, 2012 WL 1231837, at *2 (E.D. Okla. Apr. 12, 2012).[1]  The class claims

---

[1] The class includes a number of claims related to Oklahoma wells that were severed from the Roderick action in the District of Kansas and subsequently transferred to—and consolidated with—the present case.  See Chieftain Royalty Co. v. XTO Energy, Inc., No. CIV-11-29-FHS, 2012 WL 1231837, at *2 n.2 (E.D. Okla. Apr. 12, 2012).

"relate only to payment for gas and its constituents (helium, residue gas, natural gas liquids, nitrogen and condensate) produced from the wells." Id.

At present, the class includes more than 16,000 royalty owners who have approximately 14,300 leases covering some 2,296 wells. Id.; see also I App. 619. The district court found that "Chieftain is a royalty owner in numerous XTO wells located in Oklahoma," and "has a direct lessor-lessee relationship with XTO in at least two of the XTO wells." Chieftain, 2012 WL 1231837, at *2.

On behalf of the class, Chieftain asserts several theories of recovery against XTO: (1) breach of contract, (2) tortious breach of contract, (3) breach of fiduciary duty, (4) fraud, (5) conversion, (6) conspiracy, (7) accounting, and (8) injunctive relief. I App. 14–18. According to the district court, "Chieftain's underlying claim as to all theories of recovery is that XTO has underpaid royalties . . . by improperly deducting costs . . . incurred to transform the wellhead gas into a marketable condition." Chieftain, 2012 WL 1231837, at *2.

Under Oklahoma law, lessees have an implied duty of marketability (IDM). Wood v. TXO Prod. Corp., 854 P.2d 880, 882–83 (Okla. 1992). Absent lease language negating the IDM or permitting certain deductions, the lessee must bear the full cost of services undertaken to place gas in marketable condition, such as gathering, compression, dehydration, treatment, and processing ("GCDTP" services). Mittelstaedt v. Santa Fe Minerals, Inc., 954 P.2d 1203, 1208 (Okla. 1998).

Chieftain argues that none of the gas from XTO's wells is in marketable condition at the well. I App. 816. According to Chieftain, gas is not placed in marketable condition until raw gas and its constituent parts are made into: (1) residue gas of pipeline quality; and (2) natural gas liquids (NGLs) of commercial quality. Id. at 816. Chieftain claims XTO does not itself place gas into marketable condition, but instead hires various "mid-stream" companies who perform the necessary GCDTP services to make gas marketable. I App. 817. According to Chieftain, "the net result, just like a cash payment, is an effective deduction to the royalty owners for [GCDTP services]." Aplee. Br. 9 (quotation omitted). Essentially, Chieftain contends that royalty owners "should be paid the gross product value, not the net value after subtraction of the service fees." I App. 818.

The district court found that "XTO employs a uniform royalty payment methodology which does not take into account individual lease language," but noted that "[a] possible exception to this uniform treatment exists." Chieftain, 2012 WL 1231837, at *4 & n.3. Specifically, the court acknowledged "data suggest[ing] that a different payment methodology was used" for at least one of the sample wells. Id. at *4 n.3. Ultimately, however, the court decided "the uncertainty of the royalty payment methodology . . . d[id] not prevent certification in light of the substantial evidence of a uniform policy on the remaining wells." Id.

As in Roderick, XTO raises two key objections to certification. First, XTO claims each lease must be examined individually to determine whether the IDM has been negated. Here, XTO sampled 732 leases, categorizing those leases by royalty type. I App. 618–72. Based on its sample, XTO identified "86 different royalty clauses," many of which "expressly allow XTO to deduct the costs it incurs." Aplt. Br. 12. Thus, XTO argues, a lease-by-lease inquiry is necessary.

Second, XTO claims that the point of "marketability" varies from well to well because "[t]he composition of gas extracted from wells depends on the type, depth, and location of the underground deposit and the geology of the area." Aplt. Br. 15 (quotation omitted). According to XTO, this variation is particularly significant because some gas may be in marketable condition *at the well*. See I App. 592 (citing Mittelstaedt, 954 P.2d at 1207). However, the district court appears to have concluded that *no* gas is in marketable condition at the well: "The raw gas at the wellhead . . . . requires conditioning to eliminate or reduce the contaminants to acceptable limits to make th[e] gas marketable." Chieftain, 2012 Wl 1231837, at *1 (citing expert affidavit of Daniel T. Reineke).

After holding a hearing and considering the parties' respective briefs, the district court certified the proposed class of Oklahoma royalty owners under Rule 23(b)(3). See Chieftain, 2012 WL 1231837, at *1. XTO timely filed a petition for permission to appeal, which we granted. XTO Energy, Inc. v. Chieftain Royalty Co., No. 12-708 (10th Cir. June 26, 2012). XTO argues on appeal, as in

- 5 -

Roderick, that the district court abused its discretion by finding the proposed class satisfied Rule 23(a)'s commonality, typicality, and adequacy requirements, as well as Rule 23(b)(3)'s predominance requirement.

Discussion

Because we discussed at length the applicable law governing class certification in Roderick, we need not repeat that general discussion here. We review the standard employed by the district court de novo and the application of that standard for an abuse of discretion. Vallerio v. Vandehey, 554 F.3d 1259, 1264 (10th Cir. 2009). By definition, a material misapplication of the Rule 23 factors constitutes an abuse of discretion. See id.

I.      Rule 23(a)

Here, the district court found Rule 23(a)'s commonality requirement was satisfied because "the underlying basis for all claims is the assertion that XTO has made improper deductions to transform wellhead gas into a marketable condition for sale." Chieftain, 2012 WL 1231837, at *5. The district court further found that "all putative class members possess the same interest and suffer the same injury, arising from [the] general issue of the application of the implied duty of marketability and XTO's uniform royalty payment methodology." Id. (quotation and citation omitted). The district court erred by relaxing Chieftain's "strict burden of proof," Tabor v. Hilti, Inc., 703 F.3d 1206, 1228 (10th Cir. 2013)

(quotation omitted), and forgoing the rigorous analysis that Rule 23 requires, see Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

As we emphasized in Roderick, "the mere raising of a common question does not automatically satisfy Rule 23(a)'s commonality requirement." ---F.3d at ----. Instead, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551; see id. ("What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (quotation omitted)).

First, the district court did not examine whether lease language variations destroy the possibility of resolving the common question on a *classwide* basis. Specifically, the legal validity of XTO's uniform payment methodology might differ greatly among class members if certain leases negate or abrogate the IDM.[2] Indeed, the district court acknowledged the significance of lease language variations when it stated that "the express terms of the various leases will necessarily have to be evaluated . . . to determine whether the [IDM] has been abrogated." Chieftain, 2012 WL 1231837, at *5. However, the district court

---

[2] Moreover, the district court acknowledged that XTO's payment methodology might *not* be uniform as to all class members. See Chieftain, 2012 WL 1231837, at *4 n.3.

- 7 -

decided the issue was "capable of resolution at the summary judgment stage of this litigation." Id.

To be sure, the legal effect of lease language is a merits question that is likely "capable of resolution at the summary judgment stage." However, it is also an issue that bears directly on Rule 23's criteria. As the Supreme Court has emphasized, "[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims." Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n.12 (quotation omitted). Therefore, the district court must address the lease language issue as it relates to Rule 23 *before* certifying the class. See Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (citing Wal-Mart, 131 S. Ct. at 2551–52) ; see also Fed R. Civ. P. 23 advisory committee notes, 2003 Amendments (explaining that Rule 23(c)(1)(C)'s provision for conditional class certification was deleted because "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification").

XTO's sampling reflects only a fraction of the class's leases. From what we understand, approximately 13,568 leases have yet to be examined by XTO—let alone by Chieftain or the district court. See Aplt. Br. 11–12; see also I App. 621–72. Moreover, unlike the Roderick court, which considered and rejected a number of XTO's lease language arguments, the district court here did not engage in any substantive analysis of lease terms. This is particularly

significant because unlike the plaintiff in <u>Roderick</u>, Chieftain admits that some leases expressly abrogate—and one even negates—the IDM.  <u>See, e.g.</u>, II App. 154; III App. 522–23; IV App. 1029–30; Aplee. Br. 34.  Without expressing an opinion as to the merits, the district court on remand might decide that differences in lease language do not destroy commonality.[3]  But Chieftain has the burden of showing the common question is capable of classwide resolution, and the district court must rigorously analyze whether Rule 23(a)'s commonality requirement has been satisfied.

Second, while the district court appears to have concluded that none of XTO's gas is in marketable condition at the well, <u>see</u> <u>Chieftain</u>, 2012 WL 1231837, at *1 (stating that raw wellhead gas "requires conditioning . . . to make th[e] gas marketable"), we encourage the court on remand to address the marketability question directly in its commonality analysis, given that both parties devote substantial briefing to the issue.  Further, we remind the district court that, under Oklahoma law, there is a possibility that some gas could be in marketable condition *at the well*.  <u>See</u> <u>Middlestaedt</u>, 952 P.2d 1203, 1208 ("When gas is shown by the lessee to be in marketable form at the well the royalty owner may be charged a proportionate expense of transporting that gas to the point of purchase.").

---

[3]  We also leave it to the district court to determine whether and to what extent the communitization of royalty interests affects Rule 23's requirements.

Finally, as we explained in <u>Roderick</u>, "because the commonality, typicality, and adequacy requirements of Rule 23(a) 'tend to merge,' the district court on remand should consider whether the issues we have identified have any effect on its typicality or adequacy findings." ---F.3d at ---- (quoting <u>Wal-Mart</u>, 131 S. Ct. at 2551 n.5) (citation omitted).

II.    <u>Rule 23(b)(3)</u>

We also remand for reconsideration of Rule 23(b)(3)'s predominance requirement in light of the Supreme Court's recent decision in <u>Comcast Corporation v. Behrend</u>.  <u>See</u> 133 S. Ct. at 1432–33 (holding that Rule 23(b)(3)'s "even more demanding" criterion frequently will require the district court to consider issues that overlap with the merits of plaintiff's underlying claim).  On remand, we encourage the district court to examine, *inter alia*, those issues we identified in <u>Roderick</u> as being particularly relevant to the predominance inquiry (i.e., lease language, marketability,[4] and damages).

From the record, it appears that the district court's predominance analysis did not consider the individualized questions that are likely to arise.  In particular, the district court does not appear to have addressed "the elements of the underlying cause[s] of action." <u>Erica P. John Fund, Inc. v. Halliburton Co.</u>, 131

---

[4]  Even if none of XTO's gas is in marketable condition at the well, the district court should consider whether identifying the point at which a particular stream of gas *becomes marketable* will require an individualized inquiry and, if so, whether that inquiry will overwhelm questions common to the class.

S. Ct. 2179, 2184 (2011).[5] As noted, Chieftain seeks recovery on an array of theories, including contract, tort, and equity. Perhaps the district court concluded that "the central issue," Chieftain, 2012 WL 1231837, at *7—whether XTO's uniform payment methodology violated class members' leases—would predominate over individual questions. In light of Rule 23(b)(3), however, a fuller explanation would be helpful. See, e.g., Gintis v. Bouchard Transp. Co., 596 F.3d 64, 68 (1st Cir. 2010).

III.    Collateral and Judicial Estoppel

Finally, for the same reasons we articulated in Roderick, we decline to exercise our equitable power to estop XTO's opposition to class certification here.

---

[5] For example, when evaluating whether the class's fraud claim meets Rule 23(b)(3)'s predominance requirement, the district court should consider, *inter alia,* the advisory committee's note regarding fraud class actions:

> [A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

Fed. R. Civ. P. 23(b)(3) advisory committee's note; see Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2185 (2011) (discussing viability of securities fraud class action, where "fraud-on-the-market" theory eliminates the need for individualized proof of reliance).

For the foregoing reasons, we VACATE the district court's class certification order and REMAND for further proceedings consistent with this opinion.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge