Laurie TARDIFF, Plaintiff,

v.

KNOX COUNTY, Daniel Davey, in his individual capacity and in his official capacity as Knox County Sheriff, and Jane Doe and John Doe, in their individual capacities, Defendants.

No. CIV.02–251–P–C.

United States District Court, D. Maine.

Nov. 5, 2003.

Dale F. Thistle, Law Office of Dale F. Thistle, Newport, ME, Sumner H. Lipman, Lipman, Katz & McKee, Robert J. Stolt, Lipman, Katz & McKee, Augusta, ME, for Plaintiff.

John J. Wall, III, Monaghan, Leahy, Hochadel & Libby, Portland, ME, Peter T. Marchesi, Wheeler & Arey, P.A., Waterville, ME, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

GENE CARTER, Senior District Judge.

Plaintiff Laurie Tardiff brings this action against Defendants Knox County, Daniel Davey, Knox County Sheriff, and individual corrections officers Jane Doe and John Doe for unlawful search pursuant to 42 U.S.C. § 1983. Ms. Tardiff now moves for certification of a plaintiff class in this action challenging the asserted policy and practice of conducting strip and visual body cavity searches of all individuals admitted to the Knox County Jail. Defendants object to the certification of the class. The Court will certify a class of Plaintiffs pursuant to Rule 23(b)(3) although the class will be defined more narrowly than Plaintiff has requested in her Motion for Class Certification.

### I. Facts

The following allegations are found in Plaintiff Laurie Tardiff's Amended Complaint. See First Amended Complaint (Docket Item No. 2). On February 7, 2001, at approximately 5:05 p.m., Laurie Tardiff was arrested, pursuant to a warrant, at her residence in Rockland, Maine by Rockland Police Officer Patrick Allen and charged with tampering with a witness after having been charged previously with a violation of a harassment order issued by the Knox County Sheriff's Department. Prior to leaving her home, Ms. Tardiff was required to empty her pockets in front of the arresting officer. Ms. Tardiff was then taken to the Knox County Jail. After the intake procedure was complete, Ms. Tardiff was taken to a shower area, and a female corrections officer ordered her to disrobe to be searched. Once naked, she was ordered to squat and cough, exposing her vagina and anal cavity to the corrections officer. Ms. Tardiff was required to repeat the squat-and-cough procedure three times. Ms. Tardiff was held at the Knox County Jail for twenty-three hours before being released on bail.

### II. Proposed Class

In addition to the facts surrounding her own arrest and admission to the Knox County Jail, Plaintiff alleges the following facts with respect to a proposed class of plaintiffs. It is the custom and practice of the Knox County Sheriff's Department to strip search all men and women taken into the custody of the Knox County Corrections Department regardless of whether they are charged with a misdemeanor or felony. First Amended Complaint ¶¶ 36, 37. Plaintiff further alleges that she:

> seeks to represent a class of men and women who were admitted to the Knox County Jail while awaiting bail to be set, or for an initial court appearance, or were arrested on arrest warrants, or charged with misdemeanors, or charged with felonies which would not give rise to a reasonable suspicion of hiding contraband, drugs or weapons on their bodies. Included in this class are men and women who have been taken into custody by the Knox County Sheriff's Department, the Maine State Police, and the various police departments of Knox County. All the men and women of the class were incarcerated and housed at the Knox County Jail in Rockland, Maine.
>
> Plaintiff and these other men and women have all been unlawfully subjected to strip searches and visual body cavity searches due to custom and practice adopted by Knox County and the Knox County Sheriff and implemented by the Knox County Sheriff's Department. The custom and practice of Knox County and the Sheriff require every person committed to the custody of Knox County Jail to be strip searched and subjected to a visual body cavity search without any reason to believe a strip search or visual body cavity search is necessary or constitutionally permissible.

First Amended Complaint ¶¶ 2–3. Plaintiff further alleges that the searches violate Knox County's written policy. First Amended Complaint ¶ 23. Based on these

allegations, Plaintiff's Motion for Class Certification requests that the following class be certified:

> All persons who, from November 19, 1996 forward, were or who will in the future be
> a.  taken into custody by the Knox County Sheriff's Department; and
> b.  subjected to a routine strip search and visual body cavity search at the Knox County Jail pursuant to the policy, practice or custom of the Knox County Sheriff's Department.

Motion for Class Certification (Docket Item No. 9) at 1–2.

### III.  Discussion

■ Courts have considerable discretion in determining whether to certify a class. *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir.1985). However, the court must undertake a "rigorous analysis" to determine if the requirements for certification are met. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The burden is on the party seeking certification to establish that class certification is appropriate. *Id.* at 157–58, 102 S.Ct. 2364. To obtain class certification, Plaintiff must establish the four elements of Federal Rule of Civil Procedure 23(a) and that one of the elements of Rule 23(b) is applicable. *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir.2003). The initial inquiry required by Rules 23(a) and (b) does not involve an examination of the merits of the underlying case but, rather, serves the limited purpose of determining whether a class action is the most appropriate mode of adjudicating the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Defendants do not challenge Plaintiff's ability to establish any of the Rule 23(a) elements. Instead, Defendants argue that certification under Rule 23(b) is not appropriate. Plaintiff relies on 23(b)(2) and 23(b)(3), under which a class action may be maintained if:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(2) and (b)(3).[1]

■ Rule 23(b)(3) first requires Plaintiff to demonstrate not only that she shares common questions of law or fact with the proposed class but also that these common questions "predominate over any questions affecting only individual members." The proposed class set forth in Plaintiff's Motion for Class Certification is significantly broader than the class Plaintiff proposed in the First Amended Complaint in two respects. First, the class proposed in the motion to certify the class appears to include individuals already convicted of crimes and generally housed with the inmate population at the jail.[2] The Court believes that strip searches

---

1.  Defendants contend that the proposed class should not be certified pursuant to Rule 23(b)(2) because the primary relief sought by the class is monetary damages and that Plaintiff lacks standing to seek injunctive relief. Because the Court concludes that the class is properly certified pursuant to Rule 23(b)(3), it is not necessary to address (b)(2) certification.

2.  The Court's belief is confirmed by the inclusion of the affidavit of Judy Carter of Waldoboro, Maine as a potential member of the class in support of the Motion for Class Certification. In describing her experience at the Knox County Jail, Ms. Carter states that she was arrested for operating a motor vehicle under the influence of alcohol on November 19, 1998. Affidavit of Judy

of arrestees temporarily detained in a holding cell and adjudicated inmates who are members of the general jail population present sufficiently different factual and legal issues to prevent Plaintiff from satisfying the common questions requirement. Accordingly, inmates who are members of the general Knox County Jail population will be excluded from the class.

■ Second, the class proposed in the motion to certify appears to include individuals charged with drug or violent offenses. There are individual factual issues regarding whether reasonable suspicion exists to believe that arrestees charged with drug offenses or crimes of violence may be hiding contraband that are generally not presented by arrestees who are charged with offenses that do not involve drugs or violence. Therefore, the Court will exclude those individuals from the class as well. The Court finds that an appropriate class to consider for certification, with Ms. Tardiff serving as representative, is essentially the class that Plaintiff originally proposed in her First Amended Complaint:

> All people who after November 19, 1996, were subjected to a strip search and/or visual body cavity search without evaluation for individualized reasonable suspicion while being held at the Knox County Jail:
>
> (1) after having been arrested on charges that did not involve a weapon, drugs, or a violent felony; or
>
> (2) while waiting for bail to be set on charges that did not involve a weapon, drugs, or a violent felony; or
>
> (3) while waiting for an initial court appearance on charges that did not involve a weapon, drugs, or a violent felony; or
>
> (4) after having been arrested on a warrant that did not involve a weapon, drugs, or a violent felony.

Given the refined class, a common factual question exists as to whether Defendants engaged in a policy or practice under which all members of the class were searched without individualized reasonable suspicion.

They claim to have suffered the same type of injuries and are pursuing the same legal theories. The common legal question presented by the members of the above-described class is whether that policy or practice of strip and visual body cavity searching all temporary detainees not charged with drug or violent crimes is unconstitutional and, if so, whether some or all of the Defendants may be held responsible. With the narrowed class definition, the allegations of Ms. Tardiff closely track the claims of the class and share a common legal theory: namely, that these searches were unconstitutional because they were conducted pursuant to a blanket strip and visual body cavity search policy and practice rather than based on a reasonable suspicion that the individuals searched were concealing weapons or contraband.

Defendants contend that class certification is inappropriate under Rule 23(b)(3) because a plethora of individual factual issues predominate over common questions. Specifically, Defendants assert that in order to determine whether any individual member of the class is entitled to relief, it will be necessary to determine whether the individual was searched, why the individual was searched, the nature of the search itself, the place in which the search was conducted, and the manner in which it was conducted. However, the questions of whether the individual was searched and why the individual was searched are not at issue, because the narrowed class definition includes only those individuals who were strip and visual body cavity searched without reasonable suspicion that they were carrying contraband. From the allegations contained in the Amended Complaint, it does not appear that the place, nature, or manner of the search differed for Plaintiff or members of the proposed class. Given the alleged uniform and indiscriminate nature of the strip and visual body cavity search policy and practice at issue, it appears that liability can be determined on a class-wide rather than an individual basis.

Carter, attached as Exhibit 5 to Plaintiff's Motion for Class Certification at 1. Ms. Carter was sentenced to twenty-four hours in jail at the Knox

County Jail and when she returned to the jail to serve her sentence on December 9, 1999, she asserts that she was strip searched. *Id.* at 2.

Defendants also assert that individual questions relating to the number of times the person was searched, the place in which the search occurred, the nature of the search, and the manner in which it was conducted, as well as specific damages claimed by individual class members, may result in damage awards that range from nominal damages to substantial compensatory and punitive damages. As discussed above, Defendants' argument that there will be varied factual scenarios regarding the place, nature, and manner of the searches if the proposed class is certified is not supported by the record at this time. Although there may be class members who were searched more than once and an individualized examination of the impact of the searches on specific class members may be necessary, the potential for differing amounts of recovery does not automatically preclude class certification. *See Smilow,* 323 F.3d at 40–41; *Samuel v. University of Pittsburgh,* 538 F.2d 991, 995 (3rd Cir.1976). Should a genuine problem arise due to variability in damage claims, the Court may consider other options, including decertifying the class, at that time.

The second requirement under Rule 23(b)(3) is that Plaintiff must demonstrate that a class action is a fair and efficient method of adjudicating the controversy and would be superior to other methods. With respect to superiority, Defendants argue that because of the availability of attorney's fees for the prevailing party when a constitutional violation is found, Plaintiff, as well as each potential class member, has a means to make individual suits economically feasible. While Defendants correctly point out that attorney's fees are permitted by statute for any successful plaintiff in this type of action, the Court finds it unlikely that many class members would pursue these claims on their own. Moreover, resolution of the liability and damages issues within the context of a class action is likely to be a far more efficient method of adjudication than the individual assertion of law suits grounded on the same set of facts. Because Plaintiff has satisfied all the requirements of Rule 23, the Court will certify the class as the Court has defined it.