# United States Court of Appeals
## For the First Circuit

No. 08-2439

AMERICAN NATIONAL FIRE INSURANCE COMPANY,

Plaintiff, Appellant,

v.

YORK COUNTY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Selya and Ebel,[*] Circuit Judges.

David D. Dowd, with whom Curley & Curley, P.C., Jeffrey T. Edwards, and Preti, Flaherty, Beliveau & Pachios, LLP were on brief, for appellant.
Thomas C. Newman, with whom Nicole L. Bradick and Murray, Plumb & Murray were on brief, for appellee.

August 5, 2009

---

[*]Of the Tenth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  Class actions, by their very nature, can alter the usual dynamics of litigation and bring to bear on defendants and insurers alike intense pressure to settle. See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 293 (1st Cir. 2000) (discussing situations in which "the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle"). Faced with such a situation, defendant-appellant American National Fire Insurance Company (ANFIC) attempted to have its cake and eat it too: it joined in an advantageous settlement of a potentially costly class action and then attempted to recoup from its own insured (York County, Maine) the lion's share of the payment that it had made.

The district court ruled that ANFIC was not entitled to reimbursement.  See Am. Nat'l Fire Ins. Co. v. York County (D. Ct. Op.), 582 F. Supp. 2d 69, 81 (D. Me. 2008).  Discerning no error, we affirm.

## I.  BACKGROUND

We assume the reader's familiarity with the district court's exegetic account of the underlying facts, see id. at 70-77. Thus, we rehearse here only those particulars that are helpful to place the appeal itself into a workable perspective.  Because the appealed decision follows a bench trial and there is no clear error in the district court's factfinding, we state the facts as found

and draw all reasonable inferences therefrom in the light most favorable to the judgment.

We bifurcate our survey, first discussing the class action and then moving to the instant case.

### A. **The Class Action**.

In October of 2002, three persons who had been strip-searched at the York County Jail following misdemeanor arrests filed suit against the County. The suit was filed as a putative class action on behalf of the named plaintiffs and others similarly situated. See Nilsen v. York County, 219 F.R.D. 19, 20 (D. Me. 2003). It sought damages on account of an alleged pattern and practice of illegally strip-searching arrestees.

During what would become the class period — October 14, 1996 through April 30, 2004 — York County had in force a series of law enforcement liability (LEL) insurance policies underwritten by Twin Cities Insurers Company, ANFIC, and Maine County Commissioners Association Risk Pool, respectively.

Each insurer had covered York County for a portion of the class period: Twin Cities covered the County for a span that included the first sixteen days; ANFIC's coverage ran from November 1, 1996 through January 1, 1998; and the Risk Pool afforded coverage from the expiration of ANFIC's policy to a date past the end of the class period.

When the putative class action was filed, the Risk Pool was the insurer of record. Consequently, it assumed the defense on York County's behalf and retained Peter Marchesi as defense counsel for the County. It also retained Jim Poliquin as separate counsel to represent its own interests. York County retained Gene Libby to represent its (uninsured) interests.

The district court certified the class in 2003. On an interlocutory appeal, we upheld the certification. Tardiff v. Knox County, 365 F.3d 1, 7 (1st Cir. 2004). While that appeal was pending, the County notified its other insurers, each of which ultimately agreed to participate in a coordinated defense of the now-certified class action.

As noted above, ANFIC's LEL coverage was in effect for a fourteen-month interval (all of which fell within the class period). As a member of the coordinated defense group, ANFIC agreed to pay twenty-five percent of the collaborative defense costs.

The declarations page of ANFIC's policy made its coverage subject to both a $5,000 per claim deductible and an aggregate per-occurrence limit of $1,000,000. Defense costs under the policy were supplementary; they were, therefore, neither set off against liability limits nor capped in any amount.

ANFIC commenced its participation in the joint defense after issuing a reservation-of-rights letter on January 22, 2004.

In that letter, a company hierarch, William Curtin, unilaterally declared that "the $5,000 deductible will apply to each claim brought for illegal strip search within the coverage period." ANFIC never explicitly withdrew this reservation of rights.

As a prelude to a planned mediation of the class action, members of the defense group (including representatives from York County, Twin Cities, ANFIC, and the Risk Pool) held a private meeting. At this session, Marchesi stated the obvious: a settlement was desirable from everyone's point of view because the defense was faced with a sizable class, liability was a near-certainty, and total damages would likely be sky-high. Marchesi predicted that the award would far exceed the face value of all available insurance and that, in the bargain, there would be "very significant" litigation costs.[1] Libby explained that, aside from available insurance, York County had less than $100,000 to contribute to any settlement fund.

The first mediation session took place on September 20, 2004. At that session, Marchesi acted as the principal negotiator for the defense group, but all members of the group were individually represented. Curtin restated ANFIC's position that its coverage was subject to a $5,000 per claim deductible. He also

---

[1] Around the same time, the attorney for the class estimated that the class had over 8,000 members. If the case were tried, the attorney envisioned a damage award in the neighborhood of $22,000,000, plus ancillary items (counsel fees, expenses, and costs) totaling over $11,000,000.

maintained that ANFIC's contribution to any settlement should be limited to no more than fifteen percent of the total fund. The parties did not reach a settlement, but the defense group achieved a consensus favoring settlement "within the existing insurance and risk pool coverage."

Following this mediation session, Libby wrote to Curtin, acknowledging ANFIC's position vis-à-vis the policy deductible but explaining that York County viewed the $5,000 deductible as applying "to the entire class and not [to] individual class members." Regardless of how the deductible operated, Libby warned, it was likely that a verdict would exhaust the entire $1,000,000 in coverage afforded by the ANFIC policy. On that basis, Libby asked that the entire $1,000,000 be made available "to conclude negotiations with plaintiffs."

ANFIC, through Dowd, "respectfully but unequivocally rejected" York County's interpretation of how the deductible operated. It did not comment as to Libby's prediction about what would happen if the case went to trial.

On September 29, 2004, the parties attended a second mediation session. By the end of the session, each member of the defense group had agreed to up the ante. Specifically, the Risk Pool had authorized $1,850,000 toward a global settlement; Twin Cities had authorized $10,000; York County had authorized $25,000

in County funds; and ANFIC had authorized $650,000.[2]  When agreeing to contribute $650,000 toward settlement, Curtin did not communicate any restrictions on the contribution, nor did he mention that ANFIC intended to seek recoupment based on the policy's deductible provision.

In late October, Dowd sent another letter to Libby admonishing that ANFIC would be liable only "for loss in excess of $5,000 [on] each claim."  In reply, Libby reiterated that ANFIC's potential exposure exceeded $1,000,000 regardless of which interpretation of the deductible provision prevailed.  In a separate letter, Marchesi made a similar observation and exhorted ANFIC to loosen the purse strings and increase its proposed contribution to the global settlement.

Following this exchange of correspondence, Libby scheduled a conference call with Dowd and Marchesi.  This call lasted for almost an hour.  The protagonists discussed at length ANFIC's appropriate share of a global settlement.  The policy deductible was not mentioned.

Shortly thereafter, Curtin received approval from ANFIC's claims committee to make a $750,000 contribution.  The claims committee neither imposed any conditions on that authority nor stipulated that such an offer could be extended only if payment was

---

[2] These contributions were agreed to within the defense group but not offered at that time to class counsel.

made subject to the policy deductible. Dowd then called Marchesi and hiked ANFIC's proposed contribution to $750,000, provided that all other members of the defense group contributed the amounts previously authorized.

With ANFIC's contribution in hand, Marchesi was able to settle the class action by agreeing to establish a $3,300,000 settlement fund. The defense group funded the settlement as follows: the Risk Pool contributed $2,400,000, Twin Cities contributed $100,000, York County contributed $50,000, and ANFIC contributed $750,000. The settlement extinguished all claims (whether or not previously asserted) by arrestees who were unlawfully strip-searched at the York County Jail during the class period. An express condition of the settlement was that counsel for York County "provide an affidavit and/or testimony regarding the relative lack of assets available to fund a settlement that [exceeded $3,300,000]." The parties secured court approval for the settlement, releases were expected, a judgment was entered, and the matter appeared to have been concluded.

Ultimately, the district court designated 1,410 claimants to receive payments from the settlement fund. Each approved claimant received a payment of $1,719.08. Of these claimants, 273 were strip-searched during the currency of ANFIC's policy. None of these 273 claimants received more than $5,000.

### B. **The Recoupment Action**.

After the class action was put to bed, ANFIC invoked diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and sued York County in Maine's federal district court. It sought to recover the $750,000 it had contributed to the class settlement on the ground that the funds represented deductibles owed to it by York County. ANFIC posited that because each and every individual claim was settled for less than the $5,000 deductible amount, its settlement contribution was composed entirely of deductibles (advanced by it on behalf of its insured (York County)). York County denied the thrust of the complaint and asserted various affirmative defenses (including equitable estoppel and accord and satisfaction), see Fed. R. Civ. P. 8(c).

In due season, the parties cross-moved for partial summary judgment concerning the meaning of the policy's "per claim" deductible language. The district court accepted ANFIC's reading of the provision. It ruled, in effect, that "per claim" means "per claimant," not "per class." Am. Nat'l. Fire Ins. Co. v. York County, No. 06-200, 2007 WL 4531720, at *1 (D. Me. Dec. 18, 2007). That ruling has not been challenged on appeal.

The battleground then shifted to York County's affirmative defenses. After a bench trial, the district court found, in the alternative, that an accord and satisfaction had occurred, D. Ct. Op., 582 F. Supp. 2d at 77; and that, in all

events, ANFIC was equitably estopped from pursuing its claim for reimbursement of deductibles, id. This timely appeal followed.

**II.  ANALYSIS**

In this venue, ANFIC challenges each of the district court's alternative holdings. Where, as here, a district court makes alternative holdings, each independently sufficient to ground its decision, a reviewing court must sustain the judgment as long as either holding is viable. See United States v. Barletta, 652 F.2d 218, 220 (1st Cir. 1981). Because we agree with the district court that equitable estoppel bans any recovery by ANFIC on the claim asserted, we do not reach the question of whether the parties achieved an accord and satisfaction.

We review a district court's legal determinations following a bench trial de novo. United States v. 15 Bosworth St., 236 F.3d 50, 53 (1st Cir. 2001). We regard a district court's findings of fact more deferentially; we accept such findings unless they are clearly erroneous. Fed. R. Civ. P. 52(a)(6); Wine & Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1, 4 (1st Cir. 2007). Put another way, the trier's factual determinations will be set aside only if, "after careful evaluation of the evidence, we are left with an abiding conviction that those determinations and findings are simply wrong." State Police Ass'n v. Comm'r, 125 F.3d 1, 5 (1st Cir. 1997). This respectful standard takes into account that the trial court "sees and hears the witnesses at first hand

-10-

and comes to appreciate the nuances of the litigation in a way which appellate courts cannot hope to replicate." Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990).

The standard of review is important here. At several junctures, more than one plausible inference can be drawn from the raw facts. In each instance here, we are duty-bound to honor the trial judge's choice of which inference to draw. See Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); see also United States v. Ladd, 885 F.2d 954, 957 (1st Cir. 1989) ("Where, as in this case, a trier chooses among plausible (albeit competing) inferences, appellate courts should not intrude.").

In this diversity case, the substantive law of Maine controls. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Maine law, an insured who seeks to invoke equitable estoppel against his insurer in a coverage dispute must prove (i) unreasonable conduct that misleads the insured concerning the scope of coverage; and (ii) justifiable and detrimental reliance by the insured on that conduct. See County Forest Prods., Inc. v. Green Mt. Agency, Inc., 758 A.2d 59, 66 (Me. 2000); Me. Mut. Fire Ins. Co. v. Grant, 674 A.2d 503, 504 (Me. 1996). The reliance element ordinarily requires that the insurer's unreasonable conduct incite the insured "to do what resulted to his detriment and what he would not otherwise have done." Roberts v. Me. Bonding & Cas. Co., 404 A.2d 238, 241 (Me. 1979). Because equitable estoppel is an

-11-

affirmative defense, the insured bears the burden of proving both the "misleading conduct" and the "detrimental reliance" elements. Me. Mut. Fire Ins. Co., 674 A.2d at 504.

With this framework in place, we return to the case at hand. The district court found that ANFIC's conduct in settling the class action belied any intention to preserve its rights under the deductible provision. See D. Ct. Op., 582 F. Supp. 2d at 80-81. That conduct "misled the County" by inducing "a reasonable belief that ANFIC was waiving its reserved rights to seek reimbursement of any deductible when it contributed $750,000 to the [global] settlement of the York County Jail class action." Id. at 77. The County acted on that belief, to its detriment. Id. at 81. As we explain below, these findings are not clearly erroneous.

We start with the "conduct" question — whether ANFIC acted unreasonably and thereby misled York County. There are two ways to look at this question. ANFIC says that it always intended to recoup the deductibles. Viewing ANFIC's conduct in that light, the district court found that "what makes ANFIC's conduct unreasonable is . . . its failure to disclose that [its $750,000 contribution to the global settlement] was not the contribution it appeared to be." Id. at 80.

There is another way to look at ANFIC's conduct. The district court found that ANFIC's decision to pursue its deductible interest was a post hoc brain-storm, conceived only after the

global settlement had been achieved. See id. at 81 ("ANFIC's decision to seek deductible reimbursement from York County was a strategy developed ex post facto.").

In the end, however, ANFIC's intent is not the issue. On the one hand, if ANFIC intended all along to recoup the deductibles yet failed to mention that fact at the appropriate time, it should have known that York County would reasonably perceive its silence as an abandonment of the "deductible" claim and consider ANFIC's $750,000 as an unconditional contribution from ANFIC's own coffers (not merely a pass-through payment). On the other hand, if ANFIC made an about-face after the settlement and conceived the plan to recoup the deductibles at that late date, the County's belief, at the time of the settlement, that ANFIC had abandoned the "deductible" claim would be equally reasonable. Either way, the district court's finding of unreasonable conduct is inexpugnable.

ANFIC defends its position by arguing that it never formally withdrew its reservation of rights. But actions sometimes speak louder than words and this is such an instance.

ANFIC also argues that, whichever scenario might apply, it never portrayed its contribution was anything other than a loss payment. In its view, simply paying what it was obligated to pay under the policy cannot plausibly be deemed unreasonable. This platitude begs the question; that the payment was made with respect to covered losses and obligated expenses sheds very little light on

-13-

what York County reasonably perceived ANFIC's agreement to be when it entered into the global settlement.

If more were needed — and we doubt that it is — the district court's conclusion that ANFIC's conduct was unreasonable is reinforced by other facts touching upon the negotiations. For example, there was no attempt during the settlement pavane to reach an understanding between ANFIC and York County as to how parties' contributions would interact. By the same token, ANFIC made no effort to secure an agreement as to how its contribution would be allocated.[3] Moreover, when ANFIC transmitted its draft for $750,000, it imposed no conditions or reservations on negotiation of the draft. At no time prior to filing the instant action did ANFIC attempt to characterize its contribution as an advance of deductibles or suggest that the payment was anything other than an outright contribution toward the global settlement. Last — but far from least — ANFIC was well aware of both York County's financial plight and the County's representation that the global settlement would exhaust its available funds (and, hence, leave nothing to fall back on if an effort was subsequently made to recoup deductibles).

---

[3] This is especially noteworthy because, in prior settlements in which unresolved coverage disputes lingered, Curtin made a practice of assuring that there was express agreement to table the coverage dispute and resolve it after the settlement was completed.

-14-

This brings us to the second element of the equitable estoppel defense: justifiable detrimental reliance. The district court found that, had the County known that ANFIC intended to seek recoupment of its $750,000 contribution, the County would not have agreed to the global settlement. See D. Ct. Op., 582 F. Supp. 2d at 81. The district court also found that the County's reliance was justifiable and detrimental. Id.

While ANFIC challenges the reasonableness of York County's belief that the global settlement would extinguish the County's liability to all concerned, the chain of events is telling. ANFIC agreed to its contribution only after a long, complicated negotiation among the members of the defense group. It is transparently clear that each participant was striving to limit its own exposure to potentially massive damages and substantial litigation costs.

ANFIC's $1,000,000 liability coverage was plainly at risk; the dispute about the deductibles bore only marginally on that risk. Indeed, in urging ANFIC to make a hefty contribution to the settlement fund, the County specifically noted that even if ANFIC was right about how the deductible provision operated, awarded damages should exhaust its $1,000,000 policy limit and, in the bargain, produce huge defense costs (of which ANFIC had agreed to pay twenty-five percent). Under these circumstances, ANFIC's agreement to make the $750,000 contribution without any

-15-

contemporaneous mention of the policy deductible or any renewal of its reservation of rights was unreasonably deceptive. That conduct, in turn, led the County to believe, quite reasonably, that any issue anent the deductible had been swallowed up in the global settlement.

ANFIC also denigrates the finding that the County suffered a detriment, asserting that even if a fully informed York County might have acted differently, it suffered no detriment by entering into the settlement agreement because the County's alternative was worse. This is sophistic reasoning.

ANFIC's blithe assertion assumes that, had York County not acquiesced in the global settlement and agreed to contribute $50,000, the necessary alternative was a full-dress trial resulting in a multi-million-dollar verdict against York County (far in excess of its available insurance coverage). That is incorrect. The County's non-acquiescence might well have prompted the other members of the defense group to rethink the matter and, perhaps, increase their contributions to the common fund (thus allowing the settlement to be consummated); or the County's non-acquiescence might have prompted the class representatives to lower their sights and accept a lesser amount in settlement. Even if the settlement cratered and the class action went to trial, the County might have had a viable claim against ANFIC for a bad-faith refusal to settle.

See, e.g., Me. Rev. Stat. Ann. tit. 24-A, § 2436-A; Wilson v. Aetna Cas. & Sur. Co., 76 A.2d 111, 113 (Me. 1950).

The lesson is that where, as here, a party reasonably believes that it is wrapping up its entire exposure and settling a case for a sum certain, it suffers a detriment whenever it is required to pay more to fund the settlement. That lesson applies here: the County reasonably believed that its $50,000 contribution to the settlement fund would absolve it of all liability but, on ANFIC's recasting of the scenario, it will be expected to make additional payments that might aggregate as much as $750,000. Accordingly, we agree with the lower court that there was a detriment: the County did something that substantially altered its legal rights and that it would not otherwise have done. No more is exigible. See Roberts, 404 A.2d at 241.

## III. CONCLUSION

To recapitulate, the district court supportably found that, under the circumstances, ANFIC's course of conduct was unreasonable and misleading; that York County reasonably bought into the impression that ANFIC had created; and that the County, through that reliance, suffered a cognizable detriment. Consequently, the finding of equitable estoppel is bulletproof.

We need go no further. For the reasons elucidated above, we reject ANFIC's appeal.

**Affirmed**.