**Nathan TYLER, Daniel O'Neil and Carlos Marquez, Plaintiffs,**

**v.**

**SUFFOLK COUNTY, Andrea J. Cabral and Gerard Horgan, Defendants.**

**Civil Action No. 06–11354–NMG.**

United States District Court, D. Massachusetts.

June 18, 2008.

Ellen Caulo, Kathleen M. Cawley, Allen H. Forbes, Suffolk County Sheriff's Department, Boston, MA, for Defendants.

Howard Friedman, David Milton, Law Offices of Howard Friedman, P.C., Boston, MA, for Plaintiffs.

## MEMORANDUM & ORDER

GORTON, District Judge.

Inmates at a state prison allege that the conditions of their confinement violated the Eighth Amendment because they were denied free access to toilet facilities. Before the Court is the plaintiff's motion to certify a class of similarly situated prisoners pursuant to Fed.R.Civ.P. 23.

### I. *Background*

From its opening in 1991 until at least January, 2008, Building 4 of the Suffolk County House of Corrections in Boston, Massachusetts contained "dry" cells that were not equipped with toilets or handwash sinks. One consequence was that when the inmates were locked in for the night between 11:00 p.m. and 7:00 a.m., they could use the toilets only if they were specifically permitted to do so by the guards on duty. Each cell had a push-button buzzer intended to alert the guards when an inmate wished to use the restroom.

The plaintiffs were incarcerated in Building 4 at one time or another between 2003 and 2006. They allege that, due to inattention (and, possibly, malice) of the guards on duty, their bathroom access was unreliable and they were, at times, forced to urinate and defecate into bags or bottles which could not be emptied until the following morning. They assert that all inmates in Building 4 during the relevant period suffered the same lack of access even if not all were driven to the same drastic measures.

The plaintiffs move to certify a class consisting of "all inmates who are, have been or will be housed in Building 4 of Suffolk County House of Correction at any time since August 3, 2003".

### II. *Analysis*

#### A. Legal Standard

To obtain class certification, a plaintiff must establish the four elements outlined in Rule 23(a) of the Federal Rules of Civil Procedure: (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. Fed R. Civ. P. 23(a). Prior to a grant of certification, this Court must conduct a rigorous analysis of these prerequisites.

Furthermore, even if those prerequisites are met, plaintiffs must also satisfy Rule 23(b), which provides, in relevant part, that:

> An action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3) (emphasis added).

#### B. Rule 23(a) Requirements

##### 1. Numerosity

■ First, the plaintiffs must demonstrate that "the class is so numerous that joinder of all members is impracticable". Fed.R.Civ.P. 23(a)(1). Here, the class period extends from August 3, 2003, at least until the old push-button buzzer system was replaced, which the government asserts was in January, 2008. Data from the defendants indicate that over 3,600 inmates were housed in Building 4 from the beginning of the class period until May 24, 2007. Precise numbers

have not been furnished for the seven months between May, 2007 and January, 2008, but the number of inmates affected appears to be approximately 4,000.

No strict numerical threshold applies to the numerosity requirement and there can be no doubt that a class of 4,000 is too numerous to permit practical joinder of all members. The government does not contest the plaintiff's assertion that the numerosity prong is met in this case.

### 2. Commonality

■ The second requirement of Rule 23(a) is that there be "questions of law or fact common to the class". Fed.R.Civ.P. 23(a)(2). The plaintiffs state that "all members of the proposed class were subject to the same lack of access to bathroom facilities" but the government counters that "inmates . . . who never requested to use the bathroom during periods when locked in or did ask and were released were not denied bathroom access". That disagreement is at the heart of the government's opposition to this motion for class certification.

If the asserted injury is the denial of access to a bathroom at a specific moment of need then the government is correct that the plaintiffs have not demonstrated a likelihood that other inmates have suffered similarly. If, on the other hand, the injury arises simply out of being housed in a facility in which bathroom access is unreliable, then all of the approximately 4,000 inmates housed in Building 4 during the subject period share the claim.

The plaintiffs cite several cases in which classes of prisoners have been certified to press claims based upon the conditions of their confinement. *E.g. Mack v. Suffolk County*, 191 F.R.D. 16 (D.Mass.2000) (certifying class where all female pre-arraignment detainees were subject to strip-search policy); *Thomas v. Baca*, 231 F.R.D. 397 (C.D.Cal.2005) (certifying class of inmates required to sleep on the floors of their cells); *Dunn v. City of Chicago*, 231 F.R.D. 367 (N.D.Ill.2005) (certifying class of detainees held in interrogation rooms with irregular access to meals and sanitary facilities).

The government attempts to distinguish these cases on the grounds that the alleged injury in the present case is not common to all prisoners. It asserts that 1) many prisoners did not need to use the bathroom over night and 2) of those who did, many were permitted to do so promptly. The prisoners in those two categories, the government contends, have suffered no injury from the alleged conditions of their incarceration in Building 4 and are, therefore, not proper members of the class.

The government's objections extend beyond the bounds of class certification and address, instead, the merits of the plaintiffs' claims. The plaintiffs' position is that the system of bathroom access under which Building 4 operated is *per se* a violation of their Eighth Amendment rights. The questions raised by the defendants of whether the system itself was unlawful and how it was modified over time present issues of law and fact, respectively, which are common to all class members.

Similar to the lack of facilities in the interrogation room in *Dunn*, 231 F.R.D. 367, the lack of access to bathrooms alleged here certainly affected different inmates differently. The fact that not all detainees at the Los Angeles Sheriff's Department were required to sleep on the floor did not prevent certification in *Thomas*, 231 F.R.D. at 400, because all detainees were subject to the same unlawful policies. Similarly, all members of the putative class in the instant case were subject to the same allegedly unlawful policies and, as such, their claims share common questions of law and fact.

### 3. Typicality

■ The plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of [those] of the class". Fed.R.Civ.P. 23(a)(3). The government's contention with respect to typicality is the same as its argument with respect to commonality. Because it characterizes the injury in terms of specific instances of failure of access, it asserts that the different inmates had widely different experiences and that the plaintiffs have not demonstrated that their (allegedly dire) situations were typical. The plaintiffs respond that the system was unlawful and that any differences are a matter of damages, which do not defeat class certifica-

tion. *See Pettway v. Harmon Law Offices, PC,* No. 03–cv–19932–RGS, 2005 WL 2365331 at *10 (D.Mass. Sept.27, 2005). As it did in considering the commonality requirement, the Court finds that the plaintiffs have described their claims correctly and that they are typical of the purported class.

### 4. Adequacy of Representation

Just as with numerosity, the requirement that "the representative parties will fairly and adequately protect the interests of the class", Fed R. Civ. P. 23(a)(4), has not been challenged.

### C. Fed R. Civ. P. 23(b) Requirement

■ Rule 23(b)(3) simply requires predominance of the common questions of law or fact. The First Circuit has defined this test as requiring "a sufficient constellation of common issues [that] binds class members together". *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 296 (1st Cir.2000). The plaintiffs assert that the core issues in this case are common to all plaintiffs: under what system (both in theory and in fact) did the inmates of Building 4 have access to bathrooms and was that system unconstitutional? The government opposes certification because it contends that the true issue with respect to each class member will be how the system that was in place affected him particularly.

The plaintiffs' characterization of the issues in this case is persuasive. The government's response relates to the divergent damages among class members rather than to differences in liability and, as noted above, questions of damages are not an obstacle to certifying a class. *Pettway,* 2005 WL 2365331. The Court finds that a "sufficient constellation" of common questions predominates and justifies certification of this class.

### ORDER

In accordance with the foregoing, the plaintiff's motion to certify class (Docket No. 26) is **ALLOWED.**

**So ordered.**