CONNOR B., by his next friend, Rochelle VIGURS, et al., Plaintiffs

v.

**Deval L. PATRICK, et al., Defendants.**

**C.A. No. 10–cv–30073–MAP.**

United States District Court, D. Massachusetts.

Feb. 28, 2011.

28. *Id.*

29. Mot. Remand, 5 [# 11].

Sara Michelle Bartosz, Laurence D. Borten, Kara Morrow, New York, NY, Daniel J. Gleason Nutter, Jonathan D. Persky, McClennen & Fish, LLP, Rachel Brodin Nili,

Goulston & Storrs, PC, Boston, MA, for plaintiffs.

Bryan G. Killian, Massachusetts Attorney General's Office, Robert L. Quinan Jr., Amy Spector, Liza J. Tran, Attorney General's Office, Mary K. Ryan, Nutter, McClennen & Fish, LLP, Boston, MA, Susan Lambiase, Marcia Robinson Lowry, New York, NY, for defendants.

*MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION TO CERTIFY CLASS AND APPOINT CLASS COUNSEL*

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiffs bring this proposed class action on behalf of all children who have been (or will be) placed in the custody of the Massachusetts Department of Children and Families ("DCF") as a result of a state juvenile court order adjudicating them in need of "care and protection" due to abuse or neglect by their parents. Plaintiffs challenge certain facets of the foster care system in Massachusetts and seek injunctive relief under provisions of the United States Constitution and under the federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 *et seq.* ("AACWA").

On January 4, 2011, this court denied Defendants' motions to dismiss. Presently before the court is Plaintiffs' motion to certify class and appoint class counsel (Dkt. No. 2). For the reasons discussed below, Plaintiffs' motion will be allowed.

## II. *FACTS*

Plaintiffs seek certification of a class that consists of "all children who are now or will be in the foster care custody of the Massachusetts Department of Children and Families as a result of abuse or neglect." The six named Plaintiffs—Connor B., Adam S., Camila R., Andre S., Seth T., and Rakeem D.— allege that they suffered various forms of harm while in DCF custody as a result of systemic failures. These harms are briefly detailed below.

*Connor B.* Plaintiffs allege that DCF moved Connor B. (nine years old) through seven foster care placements; placed him in inappropriate foster homes, including one in which he was sexually abused; failed to provide him with needed therapy; failed to provide staff at one placement with documentation of Connor's history or medication needs; failed to place him in a residential treatment program in disregard of clinical recommendations that he needed such a program; and failed to take the necessary steps to free him for adoption or to secure a permanent placement for him. (Compl. ¶¶ 15–34.)

*Adam S.* Plaintiffs allege that DCF failed to secure safe placements for Adam S. (sixteen years old) and moved him through at least five placements, including an initial placement with adoptive parents who physically abused him (leading to the surrender of their parental rights); placed him in two residential centers that did not meet his needs, including one in which he was beaten by other residents as part of a "fight club" orchestrated by staff; failed to find a permanent home for him; and failed to prepare him to live independently. (Compl. ¶¶ 35–56.)

*Camila R.* Plaintiffs allege that DCF moved Camila R. (thirteen years old) through at least eleven placements, which included being returned at one point to her mother despite earlier physical abuse by her mother; failed to ensure that Camila received necessary therapy for mental health issues, including post-traumatic stress disorder; failed to timely assess her educational needs; and failed to seek placement with kin or to secure a permanent placement for her. (Compl. ¶¶ 57–78.)

*Andre S.* Plaintiffs allege that DCF moved Andre S. (fifteen years old) among six placements that did not meet his needs, including one kinship foster home in which he may have been sexually abused; failed to take actions necessary to preserve his relationship with family members; inappropriately placed him in a residential treatment program, where he lived for five years; failed to ensure that he receive an evaluation for sexual abuse; and failed to secure a permanent placement for him despite his be-

ing in custody since he was three years old. (Compl. ¶¶ 79–97.)

*Seth T.* Plaintiffs allege that DCF moved Seth T. (thirteen years old) through multiple placements; failed to secure a permanent placement for him, initially assigning him a goal of long-term substitute care rather than adoption even though the rights of his biological parents had been terminated; and failed to take necessary steps to preserve Seth's relationship with his brother. (Compl. ¶¶ 98–110.)

*Rakeem D.* Plaintiffs allege that DCF moved Rakeem D. (fifteen years old) among at least eight placements that did not meet his needs; failed to provide him with a kinship placement despite his expressed desire to be placed with family members; placed him in a group facility some distance from his family members; and failed to meet his educational needs. (Compl. ¶¶ 111–133.)

Plaintiffs allege that these named Plaintiffs are only six of approximately 8,500 children in DCF custody who are exposed to potential harm as a result of systemic deficiencies within DCF, including failure to maintain an adequately staffed and appropriately trained child welfare workforce; failure to properly manage foster care placements; failure to properly develop and implement case plans and service plans for foster children and their families; and failure to access available federal funding. (Dkt. No. 1, Compl. ¶¶ 215–298.)

## III. *DISCUSSION*

Fed. R. Civ. P. 23(a) authorizes suit by one or more representative parties on behalf of a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition, to obtain class certification Plaintiffs must show that they satisfy one of the additional requirements imposed by Fed. R.

Civ. P. 23(b). Plaintiffs here move under Rule 23(b)(2), which requires a demonstration that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### A. *Numerosity.*

■ To satisfy this first element, Plaintiffs must overcome a relatively "low threshold," which does not impose a precise numerical requirement. *Garcia–Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir.2009). Generally, classes of forty or more are considered sufficiently numerous under Rule 23(a)(1). *See, e.g., DeRosa v. Mass. Bay Commuter Rail Co.,* 694 F.Supp.2d 87, 98 (D.Mass.2010) (certifying class of approximately 110 members).

■ Here, the putative class comprises approximately 8,500 children in DCF custody who have suffered harm and/or are exposed to harm as a result of the systemic failures alleged in the complaint. Although Defendants do not concede that Plaintiffs have satisfied this element, the focus of their challenge lies elsewhere. In any event, it is undeniable that Plaintiffs have crossed this "low threshold." For example, Plaintiffs cite one study that identified "252 substantiated instances of abuse and neglect of children in DCF custody" in 2009.[1] (Dkt. No. 39, Pls.' Reply at 5 n. 3.) This figure does not encompass all children who, Plaintiffs allege, have suffered as a result of the other failures outlined in the complaint, including the failure to provide essential medical services, to place them in a permanent home, and to ensure adequate visitation with parents and siblings. Certainly, then, the proposed class "far exceeds the low threshold for numerosity." *Garcia–Rubiera,* 570 F.3d at 460.

### B. *Commonality.*

Although set forth as distinct elements of Rule 23, the typicality and commonality con-

---

1. Defendants cite a finding much narrower in scope, which identified twenty-three reports of physical or sexual abuse between April 1, 2009 and March 31, 2010. (Dkt. No. 31, Defs.' Opp'n at 20–21.) This case, however, is not limited to documented cases of physical or sexual abuse.

cepts "tend to merge." *Gen'l Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). As the Supreme Court explains:

> Both serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Id.* Nonetheless, they are distinct requirements under Rule 23 and, therefore, merit distinct inquiries. *See Hassine v. Jeffes,* 846 F.2d 169, 177 n. 4 (3d Cir.1988) (explaining that commonality "evaluates the sufficiency of the class itself," while typicality "evaluates the sufficiency of the named plaintiff").

■ "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 522 F.3d 6, 17 (1st Cir.2008) (quoting 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1763, at 221 (3d ed.2005)). Commonality is easily satisfied in part because "there need be only a *single issue common* to all members of the class." *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.,* 247 F.R.D. 253, 263–64 (D.Mass.2008) (quoting Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 (4th ed.2002)) (emphasis in original).

Defendants argue that Plaintiffs' "individual allegations do not translate into proper class claims," thus violating the commonality requirement. (Dkt. No. 31, Defs.' Opp'n at 10.) Defendants' chief contention is that,

"other than their unsubstantiated generalizations, [Plaintiffs] have offered no evidence that any of the harm that they experienced was caused by unlawful behavior by the Department, or that the other 8,000+ proposed class members sustained similar harm." (*Id.* at 17–18.) Plaintiffs respond that their complaint sets forth highly detailed allegations of deficiencies within DCF that expose the entire Plaintiff class to an unreasonable risk of harm, and they assert that Defendants' attack on the merits of their allegations is impermissible at this stage in the litigation.

The resolution of this issue requires the court to consider, at the outset, a question that the parties have debated vigorously: what is the evidentiary burden Plaintiffs carry in attempting to satisfy the requirements of Rule 23? At oral argument, Defendants stressed that Plaintiffs cannot rely on the allegations contained in their complaint to satisfy Rule 23 and must put forth credible evidence demonstrating the propriety of class certification. Defendants urged the court to delay its ruling on this motion to allow the parties to conduct discovery and then return to court for an evidentiary hearing.

Although guiding authority on this issue is not perfectly clear,[2] this court is confident that the burden is not as exacting as Defendants suggest. To begin with, Plaintiffs have the burden of proving that class certification is appropriate. *Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir.2003). It is also undisputed that a district court "must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Id.*

---

**2.** The confusion centers on an apparent conflict between language used in two Supreme Court decisions concerning the evidentiary burden imposed on plaintiffs in the context of class certification. In *Eisen v. Carlisle and Jacquelin,* the Court stated that "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). More recently, in *General Telephone Company of Southwest v. Falcon,* the Court stated that the certification inquiry "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," noting that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Supreme Court may resolve this confusion—and, perhaps, clarify what it means to "probe behind the pleadings"—in an upcoming ruling. *See Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 795, 178 L.Ed.2d 530 (2010) (granting certiorari on class certification question). As explained in text, however, the need for preliminary evidentiary findings only arises in certain class actions, and this is not one of them. Thus, the ongoing uncertainty described above has no impact on the resolution of this motion.

What is somewhat less transparent is when a court may or must make evidentiary findings at the certification stage. Defendants rely heavily on *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir.2008), which acknowledged that where the legal or factual premises underlying the motion for class certification are disputed, "the court *may* probe behind the pleadings to formulate some prediction as to how specific issues will play out in order to assess whether the proposed class meets the legal requirements for certification." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir.2008) (citations and quotation marks omitted) (emphasis added) (hereinafter "*New Motor Vehicles* "). "In short, a court *has the power* to test disputed premises at the certification state if and when the class action would be proper on one premise but not another." *Id.* (emphasis added). Thus, the certification issue "*may* inevitably overlap with some critical assessment regarding the merits of the case." *Id.* (emphasis added).

As the above emphases indicate, the First Circuit did not mandate that district courts make evidentiary findings at the certification stage, but simply acknowledged that such findings (or, at least, merits-based inquiries) are not prohibited.[3] In addition, it is important to place the excerpted language above in context. In *New Motor Vehicles,* the court was discussing the plaintiffs' evidentiary burden as it related to the district court's analysis under Rule 23(b)(3), which requires a finding that "questions of law or fact common to class members predominate." The court specifically noted that Rule 23(b)(3) imposes a significantly greater burden on plaintiffs, explaining that " 'the predominance criterion is far more demanding' ... than the commonality requirement." *Id.* at 20 (quoting *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). With this "far more demanding" standard in mind, the court then concluded that "a searching inquiry is in order where there are not only disputed basic facts, but also a novel theory of legally cognizable inju-

ry." *Id.* at 25. The court then explained the reach of its decision as follows:

> We do not need to resolve now whether "findings" regarding the class certification criteria are ever necessary, but we do hold that when a Rule 23 requirement relies on a novel or complex theory as to injury, as the predominance inquiry does in this case, the district court must engage in a searching inquiry into the viability of that theory and the existence of the facts necessary for the theory to succeed.

*Id.* at 26.

■ Here, the proposed class involves neither a predominance inquiry under Rule 23(b)(3), nor a novel or complex theory as to injury. *Cf. id.* (requiring rigorous analysis of plaintiffs' novel theory for proving common impact in class action against auto-manufacturers alleging conspiracy to prevent lower-priced Canadian vehicles from being imported into the United States); *In re PolyMedica Corp. Sec. Litig.,* 432 F.3d 1, 16 (1st Cir.2005) (rigorously testing the evidence submitted by both sides in putative securities class action to determine whether the fraud-on-the-market presumption was reasonably applicable); *DeRosa v. Mass. Bay Commuter Rail Co.,* 694 F.Supp.2d 87, 97 (D.Mass.2010) (noting that "statistical evidence of disparate treatment and/or disparate impact are significant" in Title VII cases in which the court must determine whether the challenged employment practice has a class-wide impact to satisfy the demanding predominance inquiry).

While the interplay of a complaint's legal and factual premises *may* require a court to evaluate the merits of the plaintiffs' allegations and make evidentiary findings before certifying *some* class actions, this is not one of them. Plaintiffs have set forth highly detailed allegations in their 309–paragraph complaint that outline pervasive alleged problems in the Massachusetts foster care system—inadequate training and supervision of foster parents, the failure to properly investigate reports of neglect and abuse, delay

---

**3.** In fact, as explained *infra,* the First Circuit expressly declined to answer the question of when evidentiary findings are permissible and

restricted its holding to the propriety of merits-based inquiries in general.

in removing children from abusive homes, denial of essential educational and medical services, the shuttling of children among multiple placements, the failure to maintain adequate sibling visitation, and the inability to secure appropriate placements for adoption—as well as the resultant harms.[4]

 Defendants demand evidence of the harm that has befallen each member comprising this putative class, but actual injury to absent class members need not be proven at this stage. *See, e.g., Kohen v. Pac. Inv. Mgmt. Co.,* 571 F.3d 672, 677 (7th Cir.2009) ("[A] class will often include persons who have not been injured by the defendant's conduct.... Such a possibility or indeed inevitability does not preclude class certification.") (internal citation omitted); *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994) ("[C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice.") (emphasis in original); Fed. R. Civ. P. 23(b)(2), 1966 Amendment Advisory Committee Note (certification appropriate if defendant's action or inaction "has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class"). Plaintiffs have detailed specific policies and/or failures within DCF that have resulted in specific harms to each named Plaintiff and that pose a continuing threat to the entire Plaintiff class. Plaintiffs need not prove how each policy or failure has harmed each member of the class at this stage. In other words, the unreasonable *risk* of harm created by these alleged systemic failures within DCF and applicable to the entire Plaintiff class is sufficient to satisfy the requirement of commonality.

This conclusion mirrors a recent decision by the Tenth Circuit, which considered a nearly identical motion for class certification filed by foster children in Oklahoma against the Oklahoma Commission for Human Services. *See D.G. v. Devaughn,* 594 F.3d 1188, 1192 (10th Cir.2010). Affirming the district court's decision to certify the class, the Court of Appeals stated that "[t]hough each class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct allegedly poses a *risk* of impermissible harm to all children in [state] custody." *Id.* at 1196 (emphasis added). The court also rebuffed the state's "repeated suggestions" to assess the weight of the plaintiffs' claims, explaining that "at the class certification stage Named Plaintiffs do not bear the burden of proving the veracity of their complaint's allegations." *Id.* at 1197. In reaching this conclusion, the Tenth Circuit contrasted the plaintiffs' burden of demonstrating that a common question exists at the certification stage with the plaintiffs' later burden of answering that question in their favor:

> Requiring Named Plaintiffs to prove all class members were inadequately monitored or are actually exposed to a threat of harm due to [the Department's] monitoring practices at the certification stage would require them to answer the common question of fact or law, rather than just prove it exists. *Rule 23(a) does not require the district court to have an answer before certifying a class;* classwide discovery and further litigation answer the question after certification.

*Id.* at 1198 (emphasis added).

In sum, Plaintiffs have satisfied the requirement of commonality by alleging that various flaws within DCF, outlined with specificity in the complaint, expose the entire Plaintiff class to an unreasonable risk of harm in violation of their constitutional rights. *See id.* (concluding that the plaintiffs satisfied commonality); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997) (concluding that nearly identical class of foster children satisfied commonality because the alleged injuries "derive from a unitary course of conduct by a single system"); *Baby Neal,* 43 F.3d at 56 (reversing and remanding district court's decision *not* to certify nearly identical class and noting that defen-

---

4. It is worth noting that one of the Supreme Court's principal concerns in *Falcon*—"the need for 'more precise pleadings'"—is not present here. *Gen'l Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)(quoting *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969)).

dants' commonality argument "has been squarely rejected by the Supreme Court").

Defendants' suggestion that Plaintiffs must *prove* at the certification stage how each policy or failure actually harmed each member of the Plaintiff class is unavailing.[5] Despite their assurances to the contrary, Defendants' argument amounts to an attempt to hold "a mini-trial on the merits" prior to certification, which is simply impermissible. *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 16 (1st Cir.2005).[6]

## C. *Typicality.*

▆▆▆ The third requirement of Rule 23(a) requires that the named Plaintiffs' claims be typical of the absent class members. The claims of the entire class need not be identical, but the class representatives must generally "possess the same interests and suffer the same injury" as the unnamed class members. *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364. The typicality requirement "is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees," and, to that end, requires "that the common claims are comparably central" to both the claims of the named plaintiffs and those of the absentees. *Baby Neal*, 43 F.3d at 57. As noted, some overlap exists between the typicality and commonality inquiries. *See Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364.

▆▆▆ Here, Defendants assert that named Plaintiffs' claims are not typical because they are "unable to establish that the class members they purport to represent have viable claims that are sufficiently similar to justify class treatment." (Dkt. No. 18, Defs.' Opp'n at 18.) Again, this argument incorrectly assumes that Plaintiffs must *prove* the allegations of their complaint at the certification stage. Additionally, the fact that the harms alleged by named Plaintiffs may differ in some respects from those suffered by unnamed Plaintiffs does not undermine typicality. *See, e.g., D.G.*, 594 F.3d at 1199 ("[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."); *Baby Neal*, 43 F.3d at 56 ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."); *Tyler v. Suffolk County*, 253 F.R.D. 8, 10–11 (D.Mass.2008) (rejecting defendants' argument that name plaintiffs were not typical despite fact that "different inmates had widely different experiences"); *Rolland v. Cellucci*, No. 98–30208–KPN, 1999 WL 34815562, at *7 (D.Mass. Feb. 2, 1999) ("The fact that individual class members may have somewhat different needs, . . . or may be entitled

---

**5.** Curiously, in arguing for this court to assess the merits of Plaintiffs' allegations, Defendants rely on cases from the Tenth and Third Circuits—two circuits that certified a nearly identical class of foster children and expressly declined to assess the merits of their allegations. *See D.G.*, 594 F.3d at 1192; *Baby Neal*, 43 F.3d at 56. Not surprisingly, the cases cited by Defendants from those jurisdictions are factually distinguishable. *See Vallario v. Vandehey*, 554 F.3d 1259 (10th Cir.2009) (reversing decision to certify class in Eighth Amendment case alleging disregard of safety risks to inmates where complaint did not identify any specific forms of requested injunctive relief); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169 (3d Cir.2009) (reversing decision to certify class of Title VII plaintiffs in disability discrimination case because of the need to conduct individualized inquiries concerning the effect of reasonable accommodations). In any event, the discussions of the evidentiary burden on class-action plaintiffs in *Vallario* and *Hohider* are consistent with this opinion. *Vallario*, 554

F.3d at 1266 ("[A] district court is [not] categorically prohibited from considering any factor, in conjunction with its Rule 23 analysis, that touches upon the merits of a movant's claims."); *Hohider*, 574 F.3d at 202 (holding that district court should have conducted "rigorous analysis" to determine whether class-wide injunctive relief was appropriate).

**6.** According to the complaint, Massachusetts ranked fourth worst in a 2008 study measuring the rate of abuse and neglect of children in foster care. (Dkt. No. 1, Compl. ¶ 5.) Recent federal audits allegedly ranked the Commonwealth eighth worst in terms of placement stability and thirteenth worst in terms of timeliness of adoptions. (*Id.*) Defendants attack these allegations in their briefs and cite countervailing data placing DCF in a more favorable light. However, for the reasons explained in text, the court is not obliged to make evidentiary findings at this stage in the litigation.

to or need different services, does not justify denying class certification."). Because Plaintiffs have identified specific systemic failures that expose the entire Plaintiff class to an unreasonable risk of harm, the typicality requirement is satisfied.

### D. *Adequacy of Representation.*

██ Rule 23(a)(4) requires that representatives fairly and adequately represent the interests of the entire class. To meet this requirement, Plaintiffs must satisfy two criteria: (1) the attorneys representing the class must be qualified and competent; and (2) the class representatives must not have interests antagonistic to or in conflict with the unnamed members of the class. *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir.1985).

██ Plaintiffs have retained experienced and competent counsel who will more than "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). Plaintiffs are represented by the non-profit legal organization Children's Rights and the law firm Nutter McClennen & Fish LLP ("Nutter"). Children's Rights' attorneys have served as class counsel on much of the major child welfare litigation in the United States. The attorneys at Children's Rights have many years of experience litigating similar class actions across the country, asserting constitutional and statutory claims on behalf of children in foster care to obtain system-wide injunctive and declaratory relief. Nutter is a leading New England law firm with a national litigation practice. Prior to filing this action, Plaintiffs' counsel reportedly conducted an in-depth investigation of all aspects of the Massachusetts child welfare system's operation and its treatment of children. Counsel indicate that they have spent hundreds of hours meeting with sources and compiling and analyzing data, and that they thoroughly researched all of Plaintiffs' legal claims. In addition, counsel is prepared to fund all costs of this litigation through trial.

The named Plaintiffs also easily satisfy this requirement. As summarized above, they each have alleged significant harms, often taking multiple forms, all of which are alleged to be attributable to failures within DCF. Thus, because Plaintiffs have retained experienced and competent counsel and because named Plaintiffs' interests are entirely consistent with those of the class, Plaintiffs meet the requirements of Rule 23(a)(4).

### E. *Rule 23(b)(2).*

In addition to satisfying the four elements of Rule 23(a), Plaintiffs must demonstrate that they also meet one of the requirements set forth in Rule 23(b). Here, Plaintiffs assert that they have satisfied the requirements of Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). These requirements "demand cohesiveness among class members with respect to their injuries." *D.G.,* 594 F.3d at 1199 (citation and quotation marks omitted). Rule 23(b)(2) is "uniquely suited to civil rights action[s]." *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir.1972).

██ Defendants argue that Plaintiffs' allegations entail "highly-individualized determination[s], making the cases ill-suited to class-wide injunctive relief." (Dkt. No. 31, Defs.' Opp'n at 24.) Yet, Plaintiffs have proposed several forms of injunctive relief that would benefit the entire class, including stricter limits on caseworker caseloads and increased visitation by caseworkers of children in foster homes. Such prospective injunctive relief is fully consistent with Rule 23(b)(2), which, as noted, applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class."

Notwithstanding Defendants' arguments to the contrary, the existence of differences among members of the Plaintiff class does not make certification improper. In fact, it is not uncommon for courts in this circuit to certify class actions in which alleged systemic deficiencies resulted in harms that manifested themselves differently among different segments of the plaintiff class. *See, e.g., Rosie D. v. Romney,* 256 F.Supp.2d 115 (D.Mass.2003) (noting court's

earlier certification of children with severe emotional disturbances alleging violations of several provisions of the federal Medicaid Act, in particular, those provisions which establish the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program); *Rolland v. Cellucci*, No. 98–30208, 1999 WL 34815562, at \*7 (D.Mass. Feb. 2, 1999) (certifying class of adults with mental retardation who reside in nursing facilities in Massachusetts despite plaintiffs' "varying needs" that require "different medical personal care attendant, transportation, visiting nurse, home health aid, or behavioral support services"); *Ricci v. Okin*, 537 F.Supp. 817 (D.Mass.1982) (certifying class of adults with mental retardation despite need for individualized determinations regarding services).

Other jurisdictions have reached the same conclusion in certifying nearly identical classes of foster children. *See, e.g., D.G.*, 594 F.3d at 1199 ("So long as [the Department's] challenged practices are based on grounds that apply generally to the class, certification under Rule 23(b)(2) is proper even if at the class certification stage it is conceivable some class members have not been actually abused, neglected, or exposed to a risk of harm."); *Marisol A.*, 126 F.3d at 377 ("The unique circumstances of each child do not compromise [class status]."); *Baby Neal*, 43 F.3d at 56 (same).

### F. *Class Limitations.*

■ Defendants argue alternatively, if certification is warranted, the court should place a number of limitations on the proposed Plaintiff class. Specifically, Defendants suggest that the court limit the class by (1) dealing with only issues of worker caseload, monitoring, and data collection; (2) including only children who have been in foster care for at least two years; and (3) dividing the class into subclasses based on the named Plaintiffs' claims. All three suggested limitations are unpersuasive.

Defendants' first suggestion asks the court to limit the available injunctive relief to policy reforms that will affect the entire Plaintiff class in the same way. This appears to be simply an attempt to reargue the point that there are differences among members of the Plaintiff class and not all requested relief will affect every Plaintiff in exactly the same way. As explained above, these differences are fully consistent with the requirements of Rule 23 and the court need not limit the Plaintiff class as a result.

The second suggestion fails to appreciate the fact that even children who have spent one week or even one day in DCF custody are allegedly exposed to an unreasonable risk of harm. Thus, restricting the Plaintiff class to children who have been in custody for at least two years is plainly improper.

■ Defendants' third proposition—the formation of subclasses—is the most reasonable of the three. Defendants suggest that the court divide the Plaintiff class into subclasses based on the claims alleged, *e.g.*, a subclass based on all children who were denied sibling visitation rights. The primary virtue of subclasses is their potential to expedite discovery and to allow the court "to conduct the trial in a more orderly manner, by tying the order of proof to particular claims raised by the individual subclasses." *Marisol A.*, 126 F.3d at 379. However, this court is wary of placing artificial limitations on the discovery process from the outset and is confident that the complaint is sufficiently detailed to allow discovery to proceed smoothly. Moreover, once discovery has ended, the court will be better equipped to divide the Plaintiff class into subclasses, if necessary, and will be able to fashion that decision with an eye towards the eventual trial. Accordingly, the court will not accept Defendants' invitation to so limit the Plaintiff class at this stage in the litigation.

### IV. *CONCLUSION*

For the foregoing reasons, Plaintiffs' Motion to Certify Class and Appoint Class Counsel (Dkt. No. 2) is hereby ALLOWED. This case is now referred to Magistrate Judge Kenneth P. Neiman for a pretrial conference pursuant to Fed. R. Civ. P. 16.

It is So Ordered.